# JOHN PARKER

## v.

# JOSEPH H. TIFFANY.

1. TRANSFER OF GOODS *in fraud of creditors—when the transaction
ceases to be fraudulent in its character.* Although the owner of goods may
have placed them in the hands of a third person with the purpose of hin-
dering and delaying the creditors of the former, the owner receiving the
note of the other party to give color to the transaction as a sale, yet, if the
debtor afterwards pays his debts, the transfer would cease to be a fraud
upon creditors, and a surrender of the note to the maker would constitute
a sufficient consideration for an agreement on the part of the latter to hold
the property as bailee, and such a change of the character of the arrange-
ment would not, under such circumstances, be deemed fraudulent.

2. ASSUMPSIT—*when it will lie.* While the general rule may be, that
assumpsit will not lie for the value of property which has been bailed,
unless it has been sold and converted into money, or money's worth, yet
where the bailee fails to return the property, and agrees to pay for it, the
bailment is converted into a sale, and assumpsit will lie as in case of any
other sale of goods.

3. FORM OF ACTION—*when it can not be questioned.* But where the
defendant in an action of assumpsit, himself asked an instruction to the
jury, which was given, and which, when considered in the light of the
evidence in the case, amounted to an admission of his liability, it was *held,*
the jury finding in strict accordance with such instruction, no question as
to the form of the action could be raised.

APPEAL from the Superior Court of Chicago; the Hon.
WILLIAM A. PORTER, Judge, presiding.

The opinion states the case.

Mr. A. N. WATERMAN, for the appellant.

Messrs. HUMPHREVILLE & DUNNE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that appellee, who had his house destroyed by fire in the spring of 1862, had placed his household furniture in a building in the possession of one Fergus.  After a short time, Fergus desiring to use the room in which the furniture was stored, appellee removed the property to appellant's building on Dearborn street, used by him as an auction and commission house.  The furniture seems to have been almost new, and of fine quality, and had been but little used.  Appellee took no receipt for the goods, although he made and kept a list, and Parker seems not to have made an inventory of the goods received or returned to appellee.  Appellant sold a portion of the furniture under the direction of appellee, and sold a part, and sent some more to Alexander's auction store to be sold, without authority from appellee.

Appellee gave an order on appellant to one Pratt for a few articles, and appellee's wife got some of the goods, but it appears that the portion thus received was of no great value.  Appellee received from appellant some small sums of money, and gave orders on him, which were paid, but the amount was not large.   Subsequently, appellant changed his business, cleared his store house of all goods belonging to himself and others, being either sold by himself or sent to Alexander's auction rooms, where they were sold.

It appears from appellee's evidence that appellant, on different occasions after going out of business, acknowledged that he owed appellee, and promised to pay him when he should have the money, but seems to have altogether failed.  Appellant testified that he sold $131.90 worth of appellee's goods, and Alexander sold $100 worth, and deducted ten dollars for commissions, and that he received in all from the sale of the goods but $231.90, and paid on the orders $25.15, and that he had charged $125 for storage, and that appellee owed him $10.   He admits that a portion of the goods, when he was repairing his house, were covered with old plaster, and he does not know what became of them.

Appellee gives a list of the furniture, which foots up the sum of $943, which he swears does not embrace the articles returned to his wife and to Pratt. The jury found a verdict for $571.49, and the case is brought to this court on appeal, and a reversal is asked, because, as is claimed, the court refused to give a portion of appellant's instructions, and because the evidence fails to sustain the verdict.

From a careful examination of the evidence, the jury might infer that appellant had sold all the goods. When asked for the money, he did not refuse to pay because he had not sold them, but if appellee and another witness are to be credited, he promised to pay the money. He received the furniture, and admits he sold, and had Alexander to sell, a part, and fails to account for the remainder. He was in the auction business, and when he closed out to change his business, we must conclude that he sold the property, as he fails to show what he did with it, and if so, the evidence warrants the amount of damages assessed by the jury. We think the evidence sustains the verdict.

It appears from the evidence that appellee's wife returned to appellant the note he gave for six hundred dollars at the time the property was stored with him. Whatever might have been the design of the parties when the note was given, when it was surrendered appellant became simply a bailee, and we must conclude that they both understood that thenceforth, at least, such was their relation to each other. Hence, we see that appellant swears that he had charged appellee with storage and commissions, and had paid orders drawn on him, and had promised to pay appellee the balance. From this it appears that long after the transaction occurred, appellant, in various modes, recognized appellee as the owner. Appellant also swears he requested appellee to remove the goods from his store. It would be difficult to perceive how he could have more clearly, or in stronger terms, recognized appellee's ownership of the property.

Had appellant, after the property came to his hands, if placed there for the purpose of hindering or delaying appellee's creditors, never recognized him as the owner, or promised to pay him, then it may be that appellee could not recover. But the note was surrendered, and appellee's ownership afterwards fully recognized in various ways, and it may thence be inferred that a new arrangement had been entered into by them. For aught that appears, appellee may have paid all his debts, and if so, the transaction was then no longer a fraud on creditors, and appellee, holding the note against appellant, could have sued and recovered it, and there could have been no fraud in rescinding the previous arrangement, and the surrender of the note was a sufficient consideration to sustain an agreement to hold the property as a bailee of appellee. That such an agreement was made may be inferred, when we see appellant so clearly recognizing the ownership in appellee. It can not be that, after having obtained his note, which could have been enforced against him, appellant may turn around and hold the property. Whatever the nature of the first transaction and its consequences, the subsequent surrender of the note and recognition of appellee's ownership of the property could not be affected by it. The court below, therefore, did right in refusing the first and second instructions asked by appellant.

It is insisted that the action of assumpsit will not lie for property which has been bailed, unless it has been sold and converted into money or money's worth, and that the evidence in this case fails to show that a large part was sold or thus converted. This is, no doubt, true when properly limited. Where a party bails property to another, and the bailee fails to return it, and agrees to pay for it, in that case, the bailment is converted into a sale, and assumpsit may be maintained as in case of any other sale of goods. But in this case, appellant asked, and the court gave, this instruction:

"The jury are instructed that if they believe, from the evidence, that Mr. Tiffany left any furniture with Mr. Parker, and that Mr. Parker has not sold the same, or converted it to his own use, or disposed of, or assumed dominion over the same, inconsistent with the rights of the plaintiff, then before Mr. Tiffany can recover the value of such furniture from Mr. Parker, he must have demanded it from Mr. Parker; and unless the jury believe, from the evidence, that Mr. Tiffany made such demand before bringing this suit, they can not allow the plaintiff anything in this action for the value of goods, neither sold, nor converted, nor disposed of, nor treated as above stated."

This instruction, asked by appellant himself, fully warranted the jury in finding for all the goods. He admits he received them, and fails to produce them or to show their loss or destruction. What other conclusion can be drawn than that he had sold, converted, or disposed of them. He must have done one or another of these things with the goods, and the instruction impliedly admits that if he did either, then he was liable. No other reasonable construction can be given to this instruction. And as the jury have found in strict accordance with it, the question as to the form of action can not be raised. The judgment of the court below is affirmed.

*Judgment affirmed.*