Samuel T. Songer *et al.*

*v.*

James Partridge *et al.*

*Filed at Mt. Vernon May 7, 1883—Rehearing denied November Term, 1883.*

1. FRAUDULENT CONVEYANCE—*binding between the parties.* Where one person conveys property to another with intent to defraud creditors, a court of equity will not aid the grantor to regain the property so placed beyond his control, but, as a general rule, will leave the parties in the position in which they have voluntarily placed themselves.

2. SAME—*when subsequent contract to reconvey may be enforced.* Although a conveyance of land is made which is fraudulent, in law, as to creditors of the grantor, and which is set aside at the instance of his creditors in a proceeding in bankruptcy, yet, where the grantor, after paying all his debts and obtaining his discharge, surrenders to his grantee the notes given by him, and the latter, in consideration of such surrender, relinquishes all his right, title and interest in the premises under the conveyance, which, by agreement, is to be cancelled, the latter agreement may be enforced in equity, as the transfer of the property is purged of the fraud, and the new contract is founded on a valid consideration.

APPEAL from the Circuit Court of Wayne county; the Hon. CHAUNCEY S. CONGER, Judge, presiding.

Mr. RUFUS COPE, and Mr. C. C. BOGGS, for the appellants:

A deed may be fraudulent, though not made to avoid the payment of debts. It is enough if it is intended to in anywise embarrass, hinder or delay the creditor. *Dunaway* v. *Robertson,* 95 Ill. 420; *Phelps* v. *Curts,* 80 id. 109; *Quarles* v. *Kerr,* 14 Gratt. 48; Bump on Fraudulent Conveyances, 19, 20.

The conveyance, being fraudulent, was good as to all the world except creditors. They being satisfied, the deed stands good, and can not be avoided by the grantor. *Hannon* v. *Hannon,* 63 Ill. 512; *Campbell* v. *Whitson,* 68 id. 240; *Horn* v. *Zimmerman,* 45 id. 14; *Ward* v. *Enders,* 29 id. 519.

Equity will not remove a cloud on a title resulting from a contract against public policy. *Bestor* v. *Wathen,* 60 Ill. 138; *Linder* v. *Carpenter,* 62 id. 309.

34—107 ILL.

A court of chancery will not interfere to grant relief to either of two parties who have engaged in a fraudulent transaction out of which suit has arisen. *Miller* v. *Markle,* 21 Ill. 152; Kerr on Fraud and Mistake, 324–326; *Dunning* v. *Bathrick,* 41 Ill. 425.

If lands be conveyed under a fraudulent contract, and the grantor complies with his part of the agreement, yet he can not have the aid of a court of equity, either to force a compliance with the agreement or to order a reconveyance, or cancellation of the deed. The rule in equity is to leave the parties to an illegal or fraudulent transaction exactly in the position their fraudulent·acts left them, extending aid to neither. *St. Louis and Jacksonville R. R. Co.* v. *Mathers,* 71 Ill. 592.

Nor will a subsequent agreement to convey, founded on the original transaction, be enforced. *Eyre* v. *Eyre,* 4 C. E. Green, 42.

A court.of equity so abhors a fraud that it will take up the objection of its own motion, if it appears from the bill, whether the defendant interpose it or not. Kerr on Fraud and Mistake, 374; *Hamilton* v. *Ball,* 2 Ired. Eq. 191.

If the case be between different volunteers, a court of equity will not interfere, but will leave the parties where it finds them. It will not aid one volunteer against another. 1 Story's Eq. Jur. 433; *Salmon* v. *Bennett,* 1 Am. L. C. 61; *Dunning* v. *Bathrick,* 41 Ill. 425.

Mr. J. M. CREBS, Mr. J. R. CREIGHTON, and Messrs. BEECHER & TRAVIS, for the appellees:

It is the policy of the law to induce parties to abandon illegal or fraudulent contracts, and substitute valid ones instead of them. Bump on Fraudulent Conveyances, (3d ed.) p. 482, title "Rescission; "*Starr* v. *Wright,* 20 Ohio St. 107; *White* v. *Brocaw,* 14 id. 341; *Swift et al.* v. *Holdridge et al.* 10 id. 231; *Matthews* v. *Buck,* 43 Maine, 265; *Fargo* v. *Ladd*

*& Reed,* 6 Wis. 118; *Hutchins* v. *Sprague et al.* 4 N. H. 469; *Thomas* v. *Goodwin et al.* 12 Mass. 140; *King* v. *Cantrel,* 4 Ired. 251; *White* v. *White,* 13 id. 265; *Thrall* v. *Spencer,* 16 Conn. 135; *Clark's Admr.* v. *Rucker,* 7 B. Mon. 583; *Davis* v. *Graves,* 29 Barb. 480; *Stanton* v. *Shaw et al.* 59 Tenn. 12; *Brooks* v. *Martin,* 2 Wall. 70; *Sumner* v. *Hicks,* 2 Blackf. 532.

Although a contract may have been declared void, as hindering or delaying creditors, yet if a subsequent arrangement is fairly made, on a sufficient consideration, it will be valid. See same authorities cited above, and *Hess* v. *Final,* 32 Mich. 517; *Conkling et al.* v. *Carson et al.* 11 Ill. 503; *Sterry* v. *Arden,* 1 Johns. Ch. 261.

The notes given by Buffington to Fitzgerald were valid, and surrendering them up was a sufficient consideration. *Parker* v. *Tiffany,* 52 Ill. 286.

The contract was valid between the parties, and could only be avoided by creditors or others injured. If the creditors did not complain, or if they had been paid, it was no longer a fraud. *Parker* v. *Tiffany,* 52 Ill. 286.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Jasper Partridge and Isaac Fitzgerald, in the circuit court of Wayne county, against Titus Buffington and Samuel T. Songer, to enjoin the prosecution of an action of ejectment, and to set aside a certain deed executed by Fitzgerald to Buffington, purporting to convey certain premises to him. The defendants interposed a demurrer to the bill, which was overruled, and they electing to abide by the demurrer, a decree was rendered in favor of complainants, as prayed for in the bill.

As the demurrer admits the material allegations of the bill, so far as this record is concerned they are to be taken as true. Conceding, then, the truth of the material allega-

tions of the bill, the question presented is whether they are sufficient to authorize the decree rendered by the court.

It appears from the bill that in 1867 complainant Fitzgerald owned in fee lots 17 and 19, in the town of Fairfield, and other real estate; that he was largely indebted to various parties from whom he had purchased goods; that he owned a large amount of real estate, but could not realize ready money upon it; that he was threatened by some of his creditors with bankrupt proceedings; that in order to protect his own rights and the rights of his creditors, believing he could sell his lands and real estate to a better advantage for his own interest and the interest of his creditors than the same could be sold by the officers of the law, knowing at the same time that under the Bankrupt law any conveyance he might make might be set aside within six months by his creditors, should they commence bankrupt proceedings against him, on the 13th day of December, 1867, he executed and delivered to Buffington,—who also knew all the facts,—a deed of the property and other lands for $5100, for which Buffington gave his notes. It is also alleged in the bill that Buffington and Fitzgerald understood that the deed might be set aside by the creditors, and they agreed that if the creditors should set aside such conveyance Fitzgerald should then surrender to Buffington his notes, and that Buffington should surrender any rights he might have in the lands which had been conveyed to him. It is also alleged that proceedings in bankruptcy were commenced in the United States District Court at Springfield; that the creditors, through the assignee, applied to the court to have the deed made to Buffington cancelled, and the deed was vacated by order of the court, and the property subjected to sale to pay the debts of Fitzgerald. It is also alleged that in the proceedings a homestead was assigned Fitzgerald in lot 19. The bill also contains this allegation: "Your orator, Fitzgerald, after said sale was set aside, having paid and settled the decree

and judgment in bankruptcy in full, and got a full and complete discharge, showing a full settlement with his creditors, in consideration of such understanding on the part of both your orator, Fitzgerald, and said defendant, Buffington, orator did then and there deliver and surrender to defendant, Buffington, the notes for said lots, and he (Buffington) did then and there surrender all right, title, interest, claim and demand he had in and to said lots by virtue of said deed to orator. * * * That said deed then and there between them was cancelled, and, as they both supposed, was fully avoided by the judgment of the court aforesaid." It also appears from the allegations of the bill, that some time subsequent to the surrender of the notes and the agreement to cancel and surrender the deed, Buffington claimed title in the lots, and conveyed lots 17 and 19 to Samuel T. Songer; that the deed was made without consideration, and that Songer had full notice of the rights of complainants in the premises; that Songer, in order to harass the complainants, brought an action of ejectment to recover the possession of the premises. The bill contains other allegations, but it will not be necessary to refer to them here.

It is contended by appellants that the conveyance of the property by Fitzgerald to Buffington was fraudulent, and being fraudulent it is binding and valid as against all persons except creditors of Fitzgerald. Where one person conveys property to another for the purpose and with the intent to defraud creditors, courts of equity will not aid such persons to regain the property thus fraudulently placed beyond control, but as a general rule courts of equity will leave parties to a fraudulent transaction in the position they have voluntarily placed themselves. Do the facts of this case bring it within the rule announced? From the allegations in the bill it may be that no actual fraud was contemplated,—that the object was to make as large an amount as possible out of the property for the benefit of creditors,—but under .

the rules of the law doubtless the conveyance might be regarded as fraudulent in law. But if the conveyance was fraudulent at law, and liable to be set aside by creditors, the question arises whether a subsequent contract entered into between the parties in relation to the conveyance may be enforced. It appears from the bill, that after the deed was set aside upon application of the creditors, Fitzgerald paid his debts and obtained a full discharge, showing a full settlement with his creditors. After this settlement Fitzgerald then surrendered to Buffington the notes which he had given for the property, and in consideration of the giving up of the notes Buffington surrendered all right, title and interest, claim and demand, he had in and to said lots by virtue of the deed which Fitzgerald had made to him, and the deed was, by agreement, to be cancelled. While the original sale might be regarded as fraudulent at law, and Fitzgerald unable to enforce in a court of equity any rights in regard to the property conveyed which arose under or by virtue of the fraudulent conveyance, yet we perceive no reason which will prevent a court from enforcing a contract entered into between the parties in regard to the property after the creditors had all been paid, and after the transfer of the property had ceased to be a fraudulent conveyance. Here, after the transfer of the property had been purged of its obnoxious character, in consideration that Buffington would relinquish all claim to the lands under the deed, the complainant delivered to him his notes, amounting to over $5000. This was a legitimate contract, founded upon a valid consideration, and we are aware of no principle which will forbid its enforcement.

A question not unlike the one here involved arose in *Parker* v. *Tiffany*, 52 Ill. 286, and a contract entered into between two parties to a fraudulent contract after it had ceased to be such, was sustained. It is there said: "Whatever the nature of the first transaction, and its consequences, the sub-

sequent surrender of the note, and recognition of appellee's ownership of the ·property, could not be affected by it." Here the surrender of Buffington's notes was a sufficient consideration for his agreement to relinquish and surrender all claim of title to the lots, and we·perceive no reason which will prevent a court of equity from enforcing such an agreement, based, as it was, upon a valid consideration. If reliance was placed on the original agreement entered into at the time the deed was made to Buffington, a different question would be presented; but such is not the case. The decree of the circuit court was doubtless rendered upon the new agreement made by the parties after complainant had paid his debts, and being founded upon that contract we are of opinion it was correct.

The decree of the circuit court will be affirmed.

*Decree affirmed.*