Langsdale *v.* Woollen, Administrator.

No. 9474.

LANGSDALE *v.* WOOLLEN, ADMINISTRATOR.

99 575
149 461

99 575
164 380

TRUST AND TRUSTEE.—*Fraudulent Conveyance.*—*Agreement.*—*Statute of Frauds.* —*Statute of Limitations.*—*Demand.*—*Presumption.*—Where one holds lands in secret trust for another, to defraud creditors, and by subsequent parol agreement the land is converted into money to be used by the trustee in paying the creditors, the balance to be put at interest until called for or until the grantor's youngest child reaches full age, the new agreement purges the original fraud, is valid though not in writing, the statute of limitations does not begin to run until demand by the *cestui que trust* or full age of the youngest child, and the lapse of twenty years raises no presumption of payment.

HARMLESS ERROR.—*Pleading.*—Error in sustaining a demurrer to a paragraph of answer to one of several paragraphs of complaint is harmless, if the same issue was made upon another paragraph of the complaint, and upon trial was found against the defendant.

SAME.—It is harmless error to sustain a demurrer to a paragraph of answer, all the averments of which are provable under another issue made by the pleadings.

DECEDENTS' ESTATES.—*Appointment of Administrator.*—That a prior administrator has been discharged because he could find no assets does not prevent the appointment of an administrator *de bonis non;* nor is the fact that proceedings are pending for the removal of the latter a reason for abatement or stay of proceedings of a suit instituted by him.

SAME.—*Collection of Debts.*—Where there is no widow, and no debts against an estate, the heirs may collect debts due the estate without an administrator, but this can not prevent the appointment of an administrator.

EVIDENCE.—*Lost Writing.*—*Immateriality.*—Where a writing, which would be proper evidence, is shown to be lost, parol proof of its contents is admissible, and if the evidence be immaterial it is necessarily harmless.

PRACTICE.—*Rule of Court, Enforcement of.*—Where a rule of court forbidding the removal of papers from the files has been violated by an attorney in the cause, as to depositions, the court may strike out his motion to suppress parts thereof.

SAME.—*Amendment of Pleading.*—*Discretion.*—The trial court has much discretion in the matter of amending pleadings, and this is not abused by refusing an immaterial amendment.

SAME.—*Interrogatories to Jury.*—In a suit by an administrator to recover money held in trust, it is immaterial whether there are demands against the estate or not, and interrogatories upon the subject should not be sent to the jury.

From the Hancock Circuit Court.

*A. C. Ayres, E. A. Brown, J. A. New* and *J. W. Jones*, for appellant.

*W. W. Woollen*, for appellee.

FRANKLIN, C.—Appellee, as administrator of the estate of John Crowder, sued appellant for money held by him in trust for the use of said estate.

The complaint contains a long history of transactions, commencing as far back as 1838, which we can not see affect the merits of the real matters in controversy. The complaint contains three paragraphs, which are substantially the same, and the parties have called our attention to the third one. After, as we think, the unimportant previous history, this paragraph alleges that in 1854 the 'defendant, as trustee, for the use of the deceased, held the legal title, and the deceased the equitable title, to certain real estate, and that they by agreement sold the same for $4,000; that $1,500 was paid in cash, which was received by deceased, and notes were taken for the balance in deferred payments; that deceased then sold all his personal property, and notes were taken for the same; that deceased was an illiterate colored man and had full confidence in the defendant, and, by agreement of said parties, all of said notes for both real and personal property were to be left with said defendant for collection, and to facilitate the same the notes were all executed to the defendant, and left with him for that purpose, under the further agreement that the defendant should collect, pay deceased's debts, and keep the balance of the same at interest until deceased called for the money, and if it should not be called for during the life of deceased, the defendant should keep it at interest until deceased's children all came of age; that deceased then moved to Canada; that deceased died in Canada without calling for the balance of said money; that all of said deceased's children were of age, the youngest being twenty-six years old before the commencement of this suit; and that the plaintiff had demanded the money, which the defendant

Langsdale v. Woollen, Administrator.

refused to pay. Demurrers were overruled to each paragraph of the complaint.

The first objection to the complaint is that it shows an arrangement to defraud the creditors of deceased. We do not see any reasonable grounds for such objection, and do not think appellant occupies any favorable position in making such objection. There is nothing showing that deceased had any creditors not provided for by the arrangement, and if they were not all fully paid, it was the fault of the defendant and not of the deceased.

The second objection is that it shows the defendant's compliance with a former contract and the deceased's non-compliance therewith. The former contract was cancelled and set aside by the subsequent agreement and the execution of the conveyance by both the parties in pursuance of the sale of the real estate. The defendant can not go back and insist upon the former contract.

The third objection is, that the complaint shows that the last agreement was made without any consideration, that the legal title was then in defendant, and the proceeds of the sale belonged to him; that after the deceased had received the $1,500 cash payment, the defendant's promise to collect the deferred payments and pay them to the deceased was without consideration.

The complaint shows that the defendant had paid $200 of encumbrance upon the land, and that he held the legal title to secure the repayment thereof, and that his title-deed was in fact only a mortgage. When the land was sold and conveyed by both defendant and deceased, the proceeds, after the payment to the defendant of said $200 and interest, belonged to the deceased, and was a sufficient consideration for the promise of defendant to pay the same to him when called for, or when his youngest child came of age.

The fourth objection is that the alleged contract shows an attempted express trust, which can only be created by being

reduced to writing. The deceased was arranging his affairs so as to move to Canada for the purpose of residing there, and he selected his intimate friend (the defendant) as his agent to settle up his affairs, as is shown by the complaint. We think the agreement was binding without being reduced to writing.

The last objection is that the complaint shows that twenty years had elapsed from the date of the contract before any demand was made; and the law presumes the liability paid when the parties are not in ignorance of their rights. According to the terms of the contract, no action could accrue upon it until there was a call for the money by the deceased, or until all his children had arrived at age. No call was ever made, and the youngest child did not arrive at the age of twenty-one years until within five years before the demand for the money and the commencement of this suit. The law raises no presumption of payment under such circumstances.

We have thus decided these objections to the complaint without any lengthy discussion of either of them, believing that the reasons therefor will obviously appear. To the third paragraph of the complaint the defendant filed an answer, the first paragraph of which is in substance as follows: That deceased died in Canada in August, 1854, and that an administrator on his estate was there appointed. And on the 28th day of September, 1855, one George W. Mears, in the county of Marion and State of Indiana, was appointed by the probate court of said county as administrator of the estate of said deceased; that he continued to act as such until the — day of ———, 1858, when he resigned, and Alexander Graydon was then appointed as his successor, who continued to act as such administrator until the 13th day of March, 1863, when he reported to the proper court that he could find no property upon which to administer, and asked to be discharged. The court then discharged him and discontinued the estate in court. (This historical part of the administra-

tion, like that of the action of the parties contained in the complaint, we do not see wherein they can affect the merits of the matters in controversy between the parties.)

The answer then proceeds: That on the 27th day of March, 1874, the plaintiff was appointed by the Marion Circuit Court administrator of said estate upon his own application, and that at said time said deceased had no estate in said county to be administered; that said deceased did not die in said county, nor the State of Indiana, nor in the United States, and that said court had no power, or authority, or jurisdiction to appoint him as such administrator; that since the institution of this suit the defendant had filed in the Marion Circuit Court a petition and application to have said plaintiff's letters annulled and set aside for the facts in this paragraph alleged, and the same is still pending in said court, and asks that this suit be abated permanently, and, if not, temporarily, until said petition in said court is decided.

This paragraph of answer was verified by the defendant, and filed in October, 1880. A demurrer was sustained to it.

In connection with the plea in abatement the following additional paragraphs of answer were filed:

2d. The general denial.

3d. Payment.

4th. Six years' statute of limitations.

5th. Fifteen years' statute of limitations.

6th. Special plea of payment.

7th. General accounting and set-off.

Similar paragraphs of answer, except the plea in abatement, were filed to the other paragraphs of complaint, with an additional paragraph of special denial of a letter alleged to have been written by the defendant to the widow of deceased, after deceased's death, admitting that he had collected the money, and promising to invest it for the use of her and the children. Demurrers were sustained to the third, twelfth, thirteenth and fourteenth of these answers to the first and second paragraphs of the complaint.

The paragraphs of answer are substantially duplicates to each paragraph of complaint. And as to those to which the demurrer was sustained, the third alleged an accounting and settlement; the twelfth, a denial of the letter as above stated; the thirteenth, special denials of the historical part of the complaint before referred to ; the fourteenth, the alleged agreement was not in writing.

The rulings upon these last named demurrers are first considered by appellant in his brief. It is insisted that as to the said third paragraph it is good, and the evidence of an accounting and settlement could not be given in evidence under the paragraph of payment. This may be true. But there was a paragraph of answer to the third paragraph of the complaint of a similar purport on an accounting and settlement and for set-off, under which could have been given in evidence all the facts that could have been given under this paragraph. And it is admitted by appellant in his brief that the third paragraph of the complaint contained all the material facts of the first and second, though more specifically pleaded. Therefore, appellant at the trial could not have been injured by this ruling.

The special denials contained in the twelfth and thirteenth paragraphs were embraced in the general denial which was in the answer, and appellant was not injured by this ruling. The fourteenth, that the agreement was not in writing, was not sufficient to constitute a defence.

Appellant, in his brief, discusses at length the sustaining of the demurrer to the plea in abatement, and insists that when the estate had been finally settled by the administrator, Graydon, in 1863, and he was by the court discharged, no administrator on that estate could afterwards be appointed. The paragraph of answer shows that the former administrator was discharged without any administration of the estate; that no assets had ever come into his hands, and upon his discharge the estate was discontinued in court, and then stood

the same as though no administrator had ever been appointed upon the estate, nothing whatever having been done in the estate by any administrator.

As to the allegations in the answer, that the deceased died in Canada, and had no assets in Marion county to be administered, the application for the appointment of appellee as administrator stated sufficient facts to give the court jurisdiction to make such appointment, and appellant can not in this collateral way attack the truth of the statements in said application. This suit was for the purpose of determining whether there were any assets in the county to be administered. And appellant can not thus get rid of the investigation, but should be held to answer as to the merits of the claim. But appellant insists that if he can not thus collaterally attack the appointment of the administrator, the court ought to have enjoined and restrained the further prosecution of this suit until his petition pending to have the letters revoked could be heard and determined. This plea in abatement does not show that said estate had ever been administered upon and finally settled.

There was no error in the court's sustaining the demurrer to the plea in abatement, or in refusing to stay the proceedings. Under the motion for a new trial, various reasons are stated. We will confine ourselves to those insisted upon by appellant in his brief, considering all others as being waived. The second instruction given to the jury is first complained of. That instruction reads as follows:

"The plaintiff, in opening his case, read to you the third paragraph of his complaint only, and stated to you that he relied for his verdict upon the facts alleged in this third paragraph. I will not, therefore, trouble you by calling your attention to the other paragraphs of the complaint.

"The plaintiff's cause of action, as charged in the third paragraph of his complaint, may be stated in a few words. It is that certain notes executed by Garner & Franco to the de-

fendant Langsdale were, in fact, the property of the decedent John Crowder; that the defendant Langsdale agreed with said Crowder that he, said Langsdale, would collect said notes for said Crowder and pay out of the proceeds the debts of Crowder, and keep the residue until Crowder called for it, and that if Crowder did not call for it in his lifetime, the said defendant should put the money at interest, and the control thereof should be kept by said defendant until said Crowder's children should become of age; that in pursuance of said contract the defendant did collect said notes; that soon after said contract was made said Crowder died, never having called upon Langsdale for said money; that the children of said Crowder have all arrived at twenty-one years of age, and that the plaintiff, as the administrator of said Crowder, has, before the bringing of this suit, demanded of said defendant that he pay over said money to him, and that the defendant has refused to do so."

The objection to this instruction is that it does not state all the material allegations of the third paragraph of the complaint. We think the long history of various transactions, extending from 1838 to 1854, between Crowder and others about their holding the title to his real estate, whether in trust for himself and family and a part of his creditors, or in fraud of his creditors, makes no difference in this controversy. Even if Langsdale got the title to the lands in either way, having paid $200 encumbrance thereon, he and Crowder, being the parties then interested, had a right to unite in the sale of the lands, and adjust the equities between themselves, providing for the payment of Crowder's debts out of the proceeds of the land, and agreeing that what was left after the defendant was made whole for what he had paid out should be held for the use of Crowder or his children, such transaction would fully supersede any fraudulent conveyance for said lands that may have theretofore been made by said Crowder. In Bump on Fraudulent Conveyance, 3d ed., page

452, it is said: "If the parties voluntarily rescind the fraudulent conveyance, a subsequent arrangement between them in regard to the same property will not be tainted by the previous fraud." See, also, the case of *Parker* v. *Tiffany*, 52 Ill. 286.

In the case of *Matthews* v. *Buck*, 43 Maine, 265, the following language is used: "No reason is perceived why parties who have made a contract in fraud of the rights of creditors, should not be permitted subsequently to rescind such contract in all cases before the rights of attaching creditors or subsequent purchasers have intervened, and where such existing rights are not affected thereby. A rule of law which should prevent them from doing so would be manifestly unjust, and tend greatly to the perpetuation of such frauds. Notwithstanding such a contract is valid between the parties, still if they voluntarily rescind it, no disability will attach, by reason of any previous fraud, to any subsequent arrangement of theirs in regard to the same property, so as to render it invalid, whether such arrangement be made with other persons or between themselves, provided the rights of third parties had not then attached."

The real ownership of the notes in the case under consideration depended upon whether such subsequent agreement was made, and not whether there had previously been a fraudulent conveyance of the lands; therefore these previous historical averments were immaterial in the real controversy, and we think the court gave to the jury a very plain and succinct statement of the substance of the real matter in controversy between the parties. We do not see that appellant has any just cause to complain of this instruction.

The fourth instruction is also objected to, which reads, substantially, as follows:

That it makes no difference whether the original arrangement between Crowder and Langsdale, in relation to putting the title to the land in Langsdale's name for the use of

Crowder, was in fraud of Crowder's creditors or not; if the parties afterwards made the agreement as set forth in the complaint, there was a valid consideration for the agreement, and the agreement was binding upon the parties.

According to the authorities heretofore cited, the subsequent agreement cancelled any fraud that may have existed in the original arrangement, and as provision was made in the subsequent agreement for the payment of all of Crowder's debts, there was no error in this instruction.

The sixth instruction is also objected to, which substantially states as follows:

If a former administrator made a demand upon the defendant for the money in suit, but such demand was made before Crowder's children became of age, the defendant, under the contract claimed by plaintiff, was under no obligation to comply with such demand, and no cause of action could thereby arise to Crowder's estate, and the statute of limitations would not then begin to run by reason of such demand.

Without discussing this instruction, we see no reasonable objection to it, and find no error in it.

Counter instructions to those given were asked and refused, and as we hold there was no error in those given, we necessarily hold that there was no error in refusing the ones asked.

The fifth reason for a new trial is that the verdict is contrary to law, and that is based upon the claim that the evidence shows that the original transaction of Crowder in putting the title to his lands out of his name was to defraud his creditors.

We have heretofore decided that whether the evidence shows that or not, makes no difference; if it did, that would not invalidate the subsequent sale of the land by both the parties, and the agreement in relation to the notes; hence the verdict was not contrary to law.

The ninth reason for a new trial is the overruling of appellant's motion to strike out parts of the deposition of Celia

J. Hart, the widow of deceased, John Crowder. She testified in her deposition that in a short time after her husband's death she wrote a letter to the defendant Joshua M. W. Langsdale, and signed her name to it, informing him that her husband was dead, and asking him to send to her some money, but he did not do it; the money she asked for was what he had collected on notes given for balance on land. She then stamped the letter and placed it in the post-office, to be sent to him by mail. She kept a copy of the letter, but it got misplaced and lost; she had looked for it but could not find it; that in a short time she received a letter in answer from the defendant Mr. Langsdale, and it also got lost in Canada. She had searched for and could not find it; she had also got a lawyer to come to her house, and look through all her papers for it, but he could not find it.

In answer to her letter, he wrote to her that he had got the money, but he would not send to her there. He said, if she would come back he would appropriate that money for her benefit and the children,—if she would come back to Indianapolis. She had written to Mr. Langsdale that her husband had bought a house and lot and owed some on it, and unless she got the money she would lose the property. In his answer he said, let it go and come there, and he would buy her one.

The objection to this evidence in the deposition was that it was immaterial. If it was only immaterial, it could not materially harm appellant. But we think it was material, and brought within the rule permitting oral testimony to be given of the contents of lost instruments. There was no error in refusing to strike out this part of the deposition. Other unimportant objections are made to other parts of the deposition, which we think unnecessary to set out in this opinion.

Appellant further complains, under other reasons for a new trial, that the court erred in striking from the files of the

case other motions for the suppression of parts of other depositions. There was a rule of record of the court, that after a cause was at issue, no party or attorney should take any of the papers in the case from the court-room or clerk's office, and appellant's counsel, in violation of said rule, had taken said other depositions, after the cause had been put at issue, to their law-office, distant from the court-room and clerk's office, and kept the same there until after the cause was called for trial. The rule was not in violation of any statute, and the court had the right to enforce such rule. We see no abuse of the discretion of the court in resorting to the remedy it did for the enforcement of its rules.

In the twenty-second reason for a new trial appellant complains of the court for refusing to admit in evidence a certain transcript of a former case in the circuit court of Marion county, Indiana, of one Mears, administrator, against appellant. The purpose announced by appellant, for which the same was asked to be given in evidence, was to prove a previous demand for the money sued for, so as to then cause the statute of limitation to commence running. That was before the youngest child came of age, and no demand, if proved then to have been made, would cause the statute of limitations to begin to run against the claim herein sued upon. There was no error in excluding this evidence for that purpose.

The twenty-fourth reason for a new trial is based upon the ruling of the court in refusing to allow appellant leave to file an additional paragraph of answer. Appellant had on file before that time seven paragraphs of answer. A demurrer had been sustained to the first, and overruled as to the others. Appellant, at the time he asked for such leave, stated to the court that the additional paragraph he desired to file would be the same as the first to which the demurrer had been sustained, with the additional averments, "that no claims were filed against the estate of John Crowder, of whom said Woollen is administrator; that there were no claims pending

Langsdale v. Woollen, Administrator.

at the time of said Woollen's appointment, and that said estate had therefore been fully administered upon."

Appellant certainly had a full opportunity to answer when he filed seven paragraphs of answer. He had in the record the benefit of the question contained in the first paragraph by a demurrer being sustained to it, and we think the additional averments proposed would add nothing to the strength of the first paragraph. The court necessarily possesses discretionary powers in allowing additional pleadings to be filed, and in this case we do not see any abuse of such discretion. There was no error in refusing to allow such additional paragraph of answer to be filed. But this question should have been presented in the assignment of errors instead of in the motion for a new trial.

The twenty-fifth reason for a new trial is the last one insisted upon by appellant, and that is, that the court erred in refusing to submit to the jury the following interrogatories:

"1st. Has the plaintiff in this action shown any indebtedness of the estate of John Crowder, if so, to whom is said estate at this time indebted, and amount of such indebtedness?

"2d. What creditors of said Crowder, if any, ever filed or proved their claim against the estate of John Crowder?"

These interrogatories were not applicable to any of the material issues in the case. This action was not for the purpose of paying debts against the estate, but for the purpose of collecting a debt coming to the estate. Where there is no widow, and no debts against the estate, the heirs could collect debts coming to such estate without an administrator, but even that remedy does not prevent the appointment of an administrator for the purpose of collecting the debts coming to the estate. *Salter* v. *Salter*, 98 Ind. 522. And for reasons heretofore stated there was no error in refusing to submit these interrogatories to the jury.

We find no error in this record. The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing

opinion, that the judgment of the court below be and it is in all things affirmed, with costs.

ELLIOTT, J., did not participate in this decision.

