---

## SUPREME COURT.

ALFRED FIELD and others agt. ISAAC L. HUNT and others. JOHN ASKHAM and others agt. THE SAME.

An action by judgment creditors to reach choses in action and equitable interests of the debtor, in other and more proper words, a *creditor's suit*, cannot be maintained where objection is made that *sixty days have not elapsed* between the issuing of the execution on the judgment at law and the commencement of the action.

Where the judgment at law is against *several*, the creditor must exhaust his remedy *by execution against all*, before he can come into a court of equity for relief. And this rule is entirely applicable to the case of *joint debtors* where all have not been served with process, or so proceeded against as to subject their *individual property to an execution at law*.

Therefore, where a judgment at law has been entered in form against joint debtors upon service of process upon one of the defendants only, and execution returned unsatisfied, a creditor's suit against the defendants cannot be maintained, for the reason that the remedy at law has not been exhausted against all of them.

On a motion for an *attachment* against a defendant, for disobedience of an *injunction*, the defendant may make a *cross-motion to dissolve the injunction;* and where it appears that the plaintiff was not entitled to the injunction for want of equity in his complaint, the defendant's motion to dissolve the injunction will be granted; and if it appears that the defendant is in *contempt* for disobedience of the injunction, he will be required only to pay the expenses of the application for the attachment, as the plaintiff, not being entitled to the injunction, can suffer no legal damages for its violation.

*New York Special Term, December,* 1861.

THE plaintiffs in the first action move for an attachment against the defendant George M. Chapman, for violating the injunction order therein, and for a receiver; and the defendants move for a dissolution of the injunctions in both actions.

The plaintiffs in each action are creditors of the firm of Isaac L. Hunt & Co., which was composed of the defendants Hunt and Julia Ann Chapman. In Nov. 1860, Hunt sold to his partner all his interest in the firm property, and subsequently, the defendant Julia Ann Chapman made and executed to the defendant George M. Chapman, a bill of sale of all the stock of merchandize formerly belonging to the said firm. This bill of sale, it is alleged in the complaint, was made with the intent to hinder, delay and defraud creditors. The plaintiffs obtained judgments, after the dissolution of the firm, upon the service of a summons upon Hunt, alone, and were in form against both Hunt and Julia Ann Chapman, under the joint-debtor act, and executions were issued thereon with the usual indorsement in such case. The plaintiffs in each action, on behalf of themselves and of all other creditors who shall come in, &c., pray relief, that the said transfer of the merchandize from Julia Ann Chapman to the defendant George M. Chapman, be declared void; that an account be taken of all the assets and property which were of the late firm of Isaac L. Hunt

& Co., in the hands of the several defendants; that the same be applied to the payment of the debts due to the plaintiffs and to such other creditors of said firm as may come in and help defray the expenses of the suit; and that a receiver be appointed.

The motion for a dissolution of the injunction was made upon the complaint and the affidavits and papers upon which the injunction order was granted.

GEORGE N. TITUS, *for plaintiffs.*
WM. CURTIS NOYES and CHAPMAN & HITCHCOCK, *for defendant Chapman.*

ALLEN, Justice. The plaintiffs are creditors of Isaac L. Hunt & Co., a firm composed of the defendant Isaac L. Hunt and Julia A. Chapman, and in these actions seek to reach the choses in action, equitable interests of that firm, and property alleged to have been transferred, in fraud of their rights as creditors, to the defendant George M. Chapman. In a word, these actions are creditors' suits, and are governed by the same rules which governed creditors' bills in the late court of chancery.

Had the objection been urged that sixty days had not elapsed between the issuing of the executions upon the judgments at law and the commencement of these actions, I should have felt constrained to hold the objection well taken, following the decision at general term in the fifth district, and the construction given by the chancellor to the statute regulating this equitable remedy. (*Cassidy* agt. *Meacham*, 3 *Paige*, 311; *Strange* agt. *Longley*, 3 *Barb. C. R.*, 650.) But as it was not relied upon, but simply suggested by the defendants, the motion will be decided without further reference to it.

A more important objection to the plaintiffs' proceedings and actions is, that there has not been a substantial exhausting of the legal remedy against the debtors.

A creditor at large cannot resort to a court of equity to reach the choses in action of his debtor, or to set aside a fraudulent conveyance of property; neither can a creditor at large of a partnership come into a court of equity to marshal the partnership assets, and compel their application to the payment of partnership debts, either ratably or with preferences. (*Hastings* agt. *Belknap*, 1 *Denio*, 190; *Andrews* agt. *Durant*, 18 *N. Y. R.*, 496; *Reubens* agt. *Joel*, 3 *Kern.*, 488; *Crippen* agt. *Hudson*, *id.*, 161; *Greenwood* agt. *Broadhead*, 8 *Barb.*, 593; *Kirby* agt. *Schoonmaker*, 3 *Barb. C. R.*, 46.)

But one of the debtors was served with process in the action at law, and although the judgment is in form against both, it is not for any purpose, except to subject the property which she owns jointly with the other defendants, to the execution upon the judgment or judgments against her. (*Oakley* agt. *Aspinwall*, 4 *Comst.*, 573.; 3 *Kern.*, 500; *Code*, §§ 375 *et seq.*) All defences are open to her in a proceeding to enforce it against her, and her individual property cannot be reached or at all affected by the judgment.

The statute is, that " whenever an execution against the property of a defendant shall have been issued on a judgment at law, and shall have been returned unsatisfied in whole or in part, the party suing out such execution may file a bill in chancery against such defendant," &c. (2 *R. S.*, 173, § 38, 1*st ed.*)

No judgment at law has been recovered against Julia Ann Chapman, and no execution has been issued against her upon any such judgment, and against her therefore within the letter of the statute, a creditor's bill will not lie; and yet without her as a party, such a suit would be defective. But aside from this literal reading of the statute, it requires a *bona fide* attempt to collect the debt by execution at law, before the equitable powers of the court can be invoked in aid of the judgment at law. The creditor must have pursued his legal remedy to every availa-

Field and Askham agt. Hunt.

ble extent, before he can resort to equity for relief. This was the established rule in chancery before the Revised Statutes, and the rule thus became a part of the positive law of the state. (*Brinckerhoff* agt. *Brown*, 4 *J. C. R.*, 671 ; *Hendricks* agt. *Robinson*, 2 *id.*, 283 ; *Wiggins* agt. *Armstrong*, *id.*, 144 ; *Crippen* agt. *Hudson*, *and Reubens* agt. *Joel*, *supra.*)

Where there are two or more joint debtors, the remedy at law must be exhausted against all, before the statute requiring a *bona fide* attempt to collect the debt can be said to have been made. It is only on the failure of the legal remedy, that equity lends its aid in the collection of a legal debt. If there is any excuse for not proceeding to final execution against one or more joint debtors, as that he is out of the jurisdiction of the court, a bankrupt, or a surety, or the like, the facts relied upon should be stated in the complaint in the equitable action.

Where the judgment is against several, the creditor must exhaust his remedy by execution against all, before he can come into a court of equity for relief. (*Child* agt. *Brace*, 4 *Paige*, 309.)

The reasoning of vice-chancellor GARDINER, fully approved by the chancellor, is entirely applicable to the case of joint debtors where all had not been served with process, or so proceeded against as to subject their individual property to an execution at law, which is this case. For, if having a judgment, it is necessary to resort to execution against all, *a fortiori*, is it necessary that the demand should be established by judgment at law as a valid demand against all ? It would be a palpable evasion of the statute to permit a creditor to obtain a judgment against joint debtors by service upon one, and upon the return of an execution resort to equity ; and great abuse not only might, but almost inevitably would, result from such practice. The best firms in New York city might find themselves defendants in a creditor's suit, upon the return of an exe-

cution upon such a judgment, by the sheriff of the county of Kings or Westchester, where the party sued might chance to reside, and the courts would be flooded with litigation entirely unnecessary.

Judge GARDINER says : " The necessity contemplated by the decisions upon the subject should exist and be established before resort is had to this court. Sound policy requires this." And again : " The only way to guard this court from an influx of business that will be overwhelming, and to save debtors from an expense equally destructive to their interests and the interests of their creditors, is strictly to adhere to the wholesome rule, that before relief can be had here, the remedy at law must be, not in name only, but in fact, exhausted." The chancellor, in the same case, says, " that where there are several defendants in the judgment, who are jointly holden for the payment of the plaintiff's debt, he should exhaust his legal remedy by executions against the property of all, before he applies to this court for relief." Most certainly, the legal remedy cannot be exhausted, when not only no execution has been issued, but no judgment has been obtained against all. Both judgment and execution against all are necessary, to entitle the creditor to this equitable relief. The same principle was re-affirmed in *Howard* agt. *Sheldon*, (11 *Paige*, 558,) and this case is not distinguished from that, by the fact that in that there was a former judgment against all the defendants for the same debt. Here, there ought to have been one. It is unjust to all the joint debtors, as well those served as those not served, to subject them and their joint property to the costs of this expensive remedy, before the cheap remedy at law has been fairly and fully tried. It is especially unjust to the party not served, because he is made to bear a part of these unnecessary costs without notice of any attempt to collect the debt at law, or any opportunity of preventing the expense by paying the debt. It is unjust to him upon another ground ; for he is a neces-

sary party to the creditor's suit, not to protect his interest in the partnership effects—for he could not be heard to object to the validity or regularity of the judgment—but that he may be charged with a contribution to his co-defendants, whose property may be appropriated to the payment of this joint debt. (*Pr. Ch.*, *Commercial Bank of Erie* agt. *Mesick*, 7 *Paige*, 448.) It is but just that he should have the opportunity to contest his liability in an action at law, before he should be compelled in equity to contribute to the payment of the demand.

A greater effect is claimed for the judgment against joint debtors, after service of process upon one, than the statute contemplates. The statute only undertakes to declare the mode and manner of executing such judgment by legal process. It does not purport to declare what shall be an exhausting of the legal remedy so as to entitle the plaintiff to equitable relief, or to say what effect shall be given to the judgment, except as it authorizes process in a prescribed form upon it, and ulterior or supplemental proceedings in the nature of an action founded upon it, to charge the defendants not originally served with process. The statute authorizes judgment in form against all, and the execution necessarily follows the judgment; but it directs an indorsement upon the execution of the names of the defendants not served with process, and only permits it to be levied of the individual property of the defendants served with process, and the personal property of such defendants owned by them as partners with the other defendants or any of them. (2 *R. S.*, 377.) The Code (§ 136) substantially re-enacts this provision. The judgment is no lien upon the real estate of the defendant not served, or upon any which he owns as tenant in common with his co-defendant. The joint-debtor act never contemplated giving the judgment authorized by it, any other or greater effect than that declared by the act itself, and it would be unjust

to give it all the effect of a judgment after service upon all the defendants, for the purposes of this equitable action.

I am of the opinion, that the remedy at law has not been exhausted, and that the motion for a receiver should be denied, and the injunction in the Askham suit be dissolved. There was no express trust created for the payment of the firm debts, upon the occasion of the transfer by Hunt to Julia Ann Chapman, and the equity of the co-partnership creditors to be paid out of the co-partnership property is subordinate to the right of the partners to dispose of the effects as they shall see fit, until a foundation is laid for equitable interference. This ground can only exist after the legal remedies have been exhausted, or upon the insolvency or bankruptcy of the partners. There is no allegation of the insolvency of the firm, or that Julia Ann Chapman is not abundantly able to respond to all the claims against the partnership. This could hardly be alleged in the face of the standing offer to give security for the payment of all judgments that shall be recovered against her. The rights of the plaintiffs are not in jeopardy so as to call for and authorise the interference of the court in the marshaling the assets for their benefit.

In the action at the suit of Field and others, there is a difficulty in the way of considering the motion to dissolve the injunction. The defendant George M. Chapman is charged with contempt of court in the violation of the injunction, and an attachment is asked against him upon affidavits making a *prima facie* case against him.

Upon the affidavits, as well on behalf of the defendant as the plaintiff, it is very evident that there has been a breach of the injunction order. It is not denied that some of the goods which were of the stock of Isaac L. Hunt & Co., and which have come to the possession of George M. Chapman, have been sold and disposed of by him, or by his clerks and agents by his authority. This authority was not conferred in words, or expressly given, but he made the

clerks in his store his agents for the sale of his goods, and kept these goods commingled with the goods which he had acquired from other sources, and made no effort to separate the goods and enable his clerks to observe the injunction. He was and is responsible in this proceeding for the acts of his agents and servants, and it is no answer to him to say, that upon being served with the order he informed his clerks of it, and left the store to their management, and took no personal part in the sale of goods. Process of this court cannot be disregarded, evaded and set at naught in this way. There is but little, if any distinction between a violation by others, thus connived at by the defendant, and a wilful violation by the defendant himself.

It is well settled, that a party in contempt cannot apply to the court for a favor. (2 *Barb. Ch. Pr.*, 281.) It is said that a party is not considered as actually in contempt until an attachment is sealed, (*id.*, 282.) But this seems to be applicable only to technical contempts, or contempts not involving a disregard of any special order of the court, as for not answering, or not paying costs ordered to be paid. (1 *Dan. Ch. Pr.*, 556.) In *Evans* agt. *Van Hall*, (*Charles' R.*, 22,) the defendant was not permitted to move to set aside a writ of *ne exeat* upon the merits where the affidavits made a *prima facie* case of contempt against him, for a violation of an injunction in the same action. A party cannot be heard in a matter which is not a strict right, while he is in contempt. (*Johnson* agt. *Perry*, 1 *Paige*, 646.) He may show that the proceedings against him subsequent to the order, the violation of which is charged as a contempt, and the order charging him with the contempt, have been irregular. (*King* agt. *Bryant*, 3 *M. & C.*, 191.) And although a plaintiff is in contempt for non-payment of costs, he may have an attachment against the defendant for not answering, as this is the ordinary process of the court, and otherwise the suit

would be absolutely stopped. (*Wilson* agt. *Bates, id.*, 197, and see *Miles* agt. *Young*, 9 *Vesey*, 172; *Anonymous*, 15 *id.*, 175.) In *Odell* agt. *Hart*, (1 *Molloy*, 492,) the defendant was allowed to move by counsel to set aside the order awarding an attachment against him, for irregularity, but the court said that for any other purpose he must appear *in vinculis*. *Requa* agt. *Patterson*, (4 *Paige*, 450,) affirms the rule that a party in contempt has no right to ask the court for a favor. It is in one sense a favor to ask the court to review its decision and decide anew upon the merits of the application for an injunction. In another sense it is not, but a right that a party should be relieved from process inadvertently granted, and should not be subjected without cause to the operation of the extraordinary powers of the court. (*See* 1 *Dan. Ch. Pr., Perkins' ed.*, 551 *et seq.*)

Upon passing upon the question of contempt, the court will not look into the merits of the case. So long as the injunction remains in force, it is the duty of parties to obey it, and the duty of the court to punish every breach thereof, and in the words of the chancellor, " in no case can a defendant be permitted to disobey an injunction regularly issued, whatever may be the final decision of the court upon the merits of the cause." " If there is not sufficient equity on the face of the bill to support the injunction, the proper course is to apply at once for its dissolution." But in the imposition of the fine and the punishment of the contemnor, the court will take into consideration the merits of the action and the right of the party to the writ. (*Sullivan* agt. *Judah*, 4 *Paige*, 444.) In this case we have a precedent of a motion entertained and granted, dissolving the injunction while the party was in contempt for its violation. There was, as in this case, an application for an attachment for a breach of the injunction and a cross-motion for a dissolution of the injunction, and the latter appli-

cation was granted upon the ground that there was no equity in the complainant's bill entitling him to the writ. Upon the disposition of the motion for an attachment at another day, the chancellor charged the defendant with the payment of the costs of the proceedings for a contempt, and upon payment of those costs dismissed the proceedings.

The violation of the injunction was in that case wilful and deliberate, but the chancellor was of opinion that there was no equity in the complainant's bill, and that therefore he had sustained no damage to which he was entitled upon the breach of the injunction, and the excuse offered he thought sufficient to prevent the imposition of any considerable fine as a punishment for contemning the process of the court.

With my view of the merits of this action, I cannot do better than follow this precedent. If I am right in my conclusion that no case is made by the complainant against the defendants Julia and George M. Chapman, the injunction must be dissolved upon the hearing of the action, and the plaintiffs will not be entitled to any benefit from it, but on the contrary large damages will have accrued to the defendants by reason of that process, for which the plaintiffs may be liable to respond. It follows that the plaintiffs, not being entitled to the injunction order, can suffer no legal damage by reason of its disregard by the defendants. But the plaintiffs are entitled to full indemnity for the expenses of proceedings for the violation of the injunction, which I fix at $125. Upon payment of that sum, as and for the costs and expenses of the application for an attachment, the proceedings for the punishment of the contempt will be dismissed, and the injunction will be dissolved. If the defendants do not elect to pay, and pay, the said sum within twenty days, then an attachment will issue, returnable at some term of the court in the first district, with an order indorsed thereon holding the said George M. Chapman to bail in the sum of $1,000, and the

motion for the dissolution of the injunction will abide the order of the court upon the return and disposal of the attachment. The costs upon the other motion will abide the event of the action.