Filed June 27, 1888.

———————◆———————

No. 13,160.

DUFFY ET AL. *v.* THE STATE, EX REL. ROGERS, ADMINISTRATOR.

DECEDENTS' ESTATES.—*Administrator.—Conversion.—Fraudulent Conveyance. —Setting Aside.—Judgment.—Principal and Surety.*—An administrator *de bonis non,* who has obtained a judgment against his insolvent predecessor and his sureties for the conversion by the former of the assets of the estate, may, without proceeding to collect such judgment from the sureties, and without alleging that there are unpaid claims against the estate, maintain an action to set aside a conveyance, which the defaulting administrator had fraudulently made to his children, of land purchased by him with the trust funds, and to subject such land to the satisfaction of the judgment lien.

From the Cass Circuit Court.

*D. P. Baldwin,* for appellants.

*D. D. Dykeman, W. T. Wilson* and *G. C. Taber,* for appellee.

ELLIOTT, J.—It is alleged in the relator's complaint that James Duffy was appointed the administrator of the estate of Michael Carney, deceased ; that Duffy received money and

property of the decedent's estate to the value of $3,000; that for the money and property so received he has never accounted, but appropriated it to his own use prior to the 1st day of January, 1880; that. Duffy invested the amount appropriated by him in the purchase of the real estate described; that he abandoned his trust and fled the State; that he was removed from his trust on the 17th day of September, 1883, and the relator appointed his successor; that, on the 21st day of November, 1883, the relator brought an action on the bond executed by Duffy as administrator, and obtained judgment against him and his sureties, McTaggart and Peirce, for $1,899 on the 4th day.of December, 1884.

It is further alleged that, in October, 1882, James Duffy conveyed the land so bought by him with trust funds to his children, his co-appellants; that, at the time the conveyances were made, he was insolvent, and had no other property than that fraudulently conveyed by him subject to execution; that he had none other at the time this suit was brought; that the grantees paid no consideration for the property conveyed to them; that the conveyances were executed for the fraudulent purpose of cheating and defrauding the creditors of Duffy. The adult appellants did not appear to the complaint, and a default was entered against them.

The administrator *de bonis non* had authority to bring and maintain this suit. The judgment obtained by him against Duffy for a breach of duty was a lien on the land fraudulently conveyed. *Blair* v. *Smith*, 114 Ind. 114; *Hanna* v. *Aebker*, 84 Ind. 411.

As the relator had a lien on the property of the fraudulent grantor, he had a right to invoke the aid of a court of equity to perfect that lien and make it available for the purpose of his trust. *Quarl* v. *Abbett*, 102 Ind. 233 (52 Am. R. 662).

The lien was created by the judgment obtained on the bond, but, in order to remove obstructions to its successful enforcement, the relator was entitled to the assistance of the courts. He might, had he so elected, have sold the land and left it

for the purchaser to assail the fraudulent conveyances, but this he was not bound to do, for he had a right, in the first instance, to clear away the fraudulent conveyances which clouded his lien. *Brown* v. *Brown,* 17 Ind. 475; *Johnson* v. *Harris,* 69 Ind. 305; *Stout* v. *Stout,* 77 Ind. 537 (541).

The judgment obtained against Duffy and his sureties conclusively adjudged that the amount found due was due the estate of the decedent, and it created a lien for that amount. It also established the further fact that the debt was part of the assets of the estate. As the debt was due the estate, it was not only the relator's right, but it was his duty to take measures to collect it by enforcing the judgment. It is plain, therefore, that he had authority to make clear his way to property subject to his lien by removing the apparent claims of fraudulent grantees. In removing these claims he simply reduced to an available form a claim that had previously been adjudged to be part of the assets of the estate represented by him.

An administrator *de bonis non* must, of necessity, have authority to prosecute all suits essential to perfect the lien of a judgment obtained by him upon the bond of his predecessor. He alone is entitled to collect the judgment and to distribute the proceeds, and, as this is his duty, he must possess the means necessary to enable him to perform it.

The debt for which the judgment was rendered was, it is important to keep in mind, a debt which the administrator *de bonis non* was authorized to collect and distribute as part of the trust estate. It was not a debt due the decedent in his lifetime, but a debt growing out of the default of the first administrator of his estate, and, therefore, one which the successor of the defaulting administrator was bound to collect. The collection of such debts must be made by the administrator *de bonis non,* since he obtains the judgment and is charged with the duty of making it available as part of the trust estate. It is not material, therefore, whether there are

creditors or not, for, as the debt was due the administrator *de bonis non* in his trust capacity, he was bound to use diligence to secure and distribute the avails of the judgment according to law.    It follows, as a necessary logical sequence, that the relator was not bound to aver that there were unpaid debts due from the estate of his decedent.    *Langsdale* v. *Woollen,* 99 Ind. 575.

If he had not obtained the judgment on a claim which accrued subsequent to the death of the intestate, there might possibly be some doubt upon this question ; but, however this may be, we think it clear that where, as here, the administrator *de bonis non* obtains a judgment against his predecessor for wrongfully converting the assets of the estate, he may enforce that judgment without alleging that there are unpaid claims against the estate.    Either this conclusion must be correct, or it must be true that an administrator *de bonis non* who obtains judgment upon the bond of his predecessor can collect his judgment only in the event that there are no other assets sufficient to pay the claims of creditors.    That this last conclusion is correct we venture to assert no one will affirm.

It is, perhaps, true that the relator might, had he so elected, have issued an execution against the sureties and enforced his judgment, but it does not follow from this that the defaulting administrator and his fraudulent grantees have a right to coerce him to pursue that course.    The truth of the one proposition does not imply the truth of the other.    The relator was, at all events, not bound to pass by property which in equity belonged to the principal debtor, and upon which his judgment was a lien, and compel payment from the sureties on the wrongdoer's bond.    There is neither equity nor justice in the demand of the appellants.    They occupy a position unfavored by courts of chancery.    The property which they seek to wrest from the creditors by fraud is equitably and legally subject to the lien of the relator's judgment, and we can conceive of no reason for permitting them to dictate to him what course he shall pursue.    There is no

merit in their claim that the relator shall leave their wrong undisturbed and compel the sureties to pay the judgment. It is not for them to fraudulently hold the property and demand that the relator shall proceed against the sureties.

Neither in law nor in equity have the appellants a right to demand that the sureties shall be compelled to pay the judgment, and they permitted to hold the property acquired by fraud. The question is not whether the relator might, if he chose, compel the sureties to pay the money, but whether he has a right to make good his lien upon the property of the principal. The lien exists, and we can see no reason why the relator may not make it available, even though it be conceded that he was not bound to do so. The question is, after all, not what he was bound to do, but, what had he a right to do. To us it seems clear that, having a lien, he had a right to make that lien perfect if he so elected, and that he was not bound to pass by the property fraudulently conveyed and seize upon that of the sureties of his predecessor.

The equities of the sureties are infinitely superior to those of the defaulting administrator and his fraudulent grantees, and the administrator was under no obligation to disregard those equities and leave untouched the property upon which his judgment was a lien. Although it may be true that he might have disregarded those equities and coerced payment from the sureties, still he was under no legal or moral obligation to do so, and as he has violated neither a legal nor a moral obligation in endeavoring to perfect his lien upon the property of the principal debtor, there is no impediment in his way to a successful prosecution of this suit. Having a lien upon the property of the principal debtor, he has a right to rely upon that lien and to decline to exact payment from persons whose equities are so great and whose position is so much favored as that of sureties. *Speiglemyer* v. *Crawford,* 6 Paige, 254.

The rule that the execution creditor may, in the first in-

stance, levy upon and sell land fraudulently conveyed to satisfy his judgment lien, necessarily implies that he may make that lien available. Suppose that appellee had levied upon the land in the hands of the fraudulent grantees and sold it, could they have defeated a suit by the purchaser at the sheriff's sale to set aside the fraudulent conveyance, upon the ground that the creditor should have issued an execution against the sureties? The question suggests its answer. If they could not defeat a suit by the purchaser, we can see no reason why they can defeat a suit brought for the same purpose by the judgment creditor.

In assuming that the appellee had a plain legal remedy against the debtor, the appellants assume more than is just. There may have been a plain legal remedy against the sureties, but there was none against the principal. In seeking to avoid the fraudulent conveyance the creditor is pursuing a remedy he is entitled to invoke as against him and his fraudulent grantees. As against them there is no plain and adequate legal remedy, for the creditor is invoking the aid of equity to remove a cloud from his legal lien. This he unquestionably has a right to do, for the law affords him no adequate relief. It is, therefore, not just to assume that as against them the creditor has a plain and adequate legal remedy. It is true this assumption is not directly made, but it is the tacit assumption on which the argument is constructed. The truth is that the appellants are contesting the case, not because there is an adequate legal remedy against them, but because there is such a remedy against some other persons, and these other persons the sureties of the principal debtor and fraudulent grantor. When regard is had, as in justice it should be, to the strong equities of the sureties, it can not be justly adjudged that the principal debtor and his fraudulent grantees shall be allowed to hold the land of the principal debtor and compel the creditor to proceed against the sureties.

But is it not assuming too much to assert that the claim

could, in any event, have been made off the sureties? We can not assume that the administrator has done what he ought not to have done, in a case where the demand comes from a fraudulent grantor and his grantees. It would seem that those parties ought, before they can hold the property acquired by fraud, if they can hold it at all, show that the debt could have been made from the sureties. It is not easy to see upon what equitable or legal grounds they can urge that, in order to protect them in the enjoyment of property fraudulently conveyed, the courts shall presume that the administrator has been guilty of a wrong.

It follows from what we have already said that it was not necessary for the relator to allege that the sureties were insolvent, for, if he had a right to make good his lien against the property of the principal debtor, then it is immaterial whether the sureties were solvent or insolvent. If the relator had a right to make his lien available, without proceeding against the sureties, then it was not incumbent upon him to do more than show that the principal debtor had no property subject to execution other than that fraudulently conveyed when the conveyances were executed and the suit was brought.

It appears on the face of the complaint that Peirce and McTaggart were the sureties on the bond of James Duffy, and this is sufficient to entitle them to protection as sureties under the general rules of the law. The fact that they were sureties, while it may not of itself entitle them to demand as of right the benefit of the statutory provision requiring the creditor to first exhaust the property of the principal debtor subject to execution, does entitle them to the benefit of the legal and equitable rules which govern the relation of principal and surety. The relationship between parties liable upon a bond may be shown, and, when shown, the sureties may assert their rights and equities. *Knopf* v. *Morel,* 111 Ind. 570; *Montgomery* v. *Vickery,* 110 Ind. 211; *Scherer* v.

*Schutz,* 83 Ind. 343 ; *Bowser* v. *Rendell,* 31 Ind. 128 ; *Harker* v. *Glidewell,* 23 Ind. 219.

In this instance the relationship does appear from the character of the instrument as well as from the allegations of the complaint, and the appellants are in no situation to complain of the insufficiency of the pleading in this particular. It is, indeed, not easy to perceive how they could successfully complain, even if the averments of the complaint were much more indefinite than they are, since the creditor has so treated them, and the nature of the bond shows that only James Duffy, the defaulting administrator, could have been the principal. The relation of James Duffy so fully appears that his co-judgment defendants Peirce and McTaggart, are entitled to be treated as sureties, with all the general rights and equities of that favored position, and the relator was not in the wrong in so treating them. As they are sureties, the relator is not in the position of one resorting to an extraordinary remedy to make good a lien or a debt where there is a plain legal remedy open to him which he may invoke without doing injustice to the rights of others. It was both equitable and proper for him to elect to seize the property of the principal debtor, bound by the lien of his judgment, rather than to seize the property of the sureties. The fact that there were sureties with superior rights and equities plainly distinguishes this case from those cases which hold that where there is an adequate remedy at law equity will not interfere, and that extraordinary remedies can not be invoked. We do not depart from the doctrine of *Baker* v. *State, ex rel.,* 109 Ind. 47, but we affirm that it does not apply to a case where, as here, a fraudulent conveyance is sought to be annulled by a creditor who prefers to make his debt out of the property of the principal debtor rather than to exact it from sureties.

It is true, as counsel say, that *prima facie* an administrator has nothing to do with real estate, but this is nothing to the present purpose. The administrator is not seeking to

obtain real estate; he is seeking to make available a lien created by a judgment in his favor. He is not seeking to subject a decedent's land to sale; he is seeking to clear away a fraudulent conveyance in order to make his judgment lien available. As said in a similar case: "This action was not for the purpose of paying debts against the estate, but for the purpose of collecting a debt coming to the estate." *Langsdale* v. *Woollen, supra.*

The right to sue on the bond carried with it all incidental rights. The right to obtain a judgment necessarily implies the right to enforce the judgment when obtained. As the relator unquestionably had a right to sue on the bond and obtain judgment, he must, under a plain legal principle, have the incidental rights necessary to enforce that judgment. If the right to bring a suit to set aside a fraudulent conveyance is essential to the enforcement of the judgment, then it exists in the relator, and that it is essential to enforce the judgment the complaint quite clearly shows. The relator is not, therefore, exercising any extraordinary powers, nor is he seeking to obtain land; all that he has done has been done in the exercise of an incidental power involved in his right to obtain and enforce a judgment.

We have fully discussed the questions presented upon the complaint, more fully, perhaps, than, in view of the manner of the attack, the appellants had a right to ask, and we find no substantial defect in it.

We have studied the evidence and we find no reason for reversing the judgment of the trial court.

Judgment affirmed.

Filed June 27, 1888.