WILLIAM H. BAKER, Respondent, *v.* ABBY POTTS, Defendant, and
CHARLES F. POTTS, Appellant.

*A mortgagor who sells an equity of redemption in land to one who does not assume
the mortgage remains primarily liable, although the vendee gives her bond to the
holder of the mortgage for the payment thereof — property conveyed by the vendee
to the holder of a deficiency judgment need not be applied to its payment before the
filing of a creditor's bill against the mortgagor — a voluntary conveyance is pre-
sumptively fraudulent as to creditors.*

Abby Potts, who had executed a mortgage upon a farm owned by her, conveyed
the farm to one Jennie Huff by a deed containing no clause assuming the
mortgage. Mrs. Huff subsequently executed a bond to the owner of the
mortgage as collateral security for the payment thereof, and thereafter an
action was brought to foreclose the mortgage which resulted in the entry of a
deficiency judgment against both Mrs. Potts and Mrs. Huff. After executions
on the deficiency judgment had been returned unsatisfied, Mrs. Huff conveyed
to the assignee of the deficiency judgment certain premises in which she had
an equity of redemption.

In an action brought by the assignee of the deficiency judgment to set aside a
conveyance made by Mrs. Potts to her son prior to the foreclosure of the mort-
gage, on the ground that such conveyance was fraudulent, it was

*Held,* that, as Mrs. Potts was primarily liable for the amount of the deficiency
judgment and Mrs. Huff was only a surety therefor, the former was not in a
situation to insist that the plaintiff should have sold the premises conveyed to
him by Mrs. Huff and have applied the proceeds upon the deficiency judgment
before beginning the present action.

*Semble,* that the rule that a judgment creditor must make a *bona fide* endeavor to
collect his judgment against all of the judgment creditors before filing a cred-
itor's bill, assumes that all of the judgment debtors are liable in an equal
degree and does not obtain if one of the judgment debtors is a surety and the
other is primarily liable;

That the fact that the conveyance by Mrs. Potts to her son was a voluntary one
created the presumption that it was fraudulent.

APPEAL by the defendant, Charles F. Potts, from a judgment of
the Supreme Court in favor of the plaintiff, entered in the office of
the clerk of the county of Oswego on the 24th day of December,
1900, upon the decision of the court, rendered after a trial at the
Oswego Special Term, setting aside a conveyance of real estate.

On the 13th day of May, 1886, the defendant, Abby Potts, gave
her mortgage to one Martin Cox upon ninety-three acres of land
owned by her to secure the payment of the sum of $700. A bond

accompanied the mortgage, which was executed by the mortgagor and her husband, Van Rensselaer Potts. The mortgagee, Cox, died intestate, July 1, 1897, being then the owner of the mortgage, the principal of which was unpaid, and William Baker, the plaintiff in this action, was duly appointed his administrator. On the 23d day of May, 1898, Baker assigned the bond and mortgage to George F. Morss, which assignment was recorded June 7, 1898. March 29, 1898, Mrs. Potts conveyed to Jennie M. Huff all the land covered by the mortgage and subject thereto, but the deed of conveyance contained no clause whereby the said mortgage was assumed. At the time of the assignment of the Cox mortgage to Morss, the said Jennie Huff and her husband joined in a bond to Morss as collateral security for the payment of said mortgage.

On the 1st of November, 1898, Morss commenced an action to foreclose his mortgage and judgment was entered and the premises sold, and a judgment for deficiency for $501.22 was entered against the Potts and the Huffs on the 28th day of January, 1899. In February executions were issued on this judgment for deficiency, one against the Potts to the sheriff of Oswego county, where they resided, and which was returned unsatisfied in the month of February of that year, and one to the Onondaga county sheriff, where the Huffs resided, and which was returned unsatisfied April 3, 1899. On the 27th day of July, 1899, and after the return of these executions unsatisfied, Morss assigned the deficiency judgment to the plaintiff. On the same day Jennie Huff conveyed to the plaintiff land and premises in the city of Syracuse and also a farm, each of which was subject to other liens, and each transfer was made subject to the lien of the deficiency judgment which is the basis of this action.

On the 11th of March, 1898, Abby Potts conveyed a piece of land consisting of a house and lot in Williamstown, in the county of Oswego, to her son, the defendant Charles F. Potts. At the time of this conveyance the son knew of the existence of the mortgage indebtedness and that a foreclosure was imminent, and it is this conveyance which is set aside by the judgment in this action.

*Charles R. Coville,* for the appellant.

*A. B. Rider* and *O. M. Reilly,* for the respondent.

SPRING, J. :

It is contended on behalf of the appellant that the action cannot be maintained inasmuch as the lands owned by Mrs. Huff and conveyed to the plaintiff and which were subject to the lien of the deficiency judgment have never been sold by virtue of that judgment. The court has found that the Syracuse property is of the value of $1,500 and was subject to the mortgage of $1,000, showing, therefore, a tangible equity in Mrs. Huff of $500 which upon a sale might have been applied in reduction of the judgment.

It has always been held that before a judgment creditor can resort to equity to enforce his judgment he must have exhausted his legal remedies against the judgment debtor. The Code of Civil Procedure, section 1871, in recognition of this principle, has made the issuance and return of an execution unsatisfied the necessary preliminary to get standing for the maintenance of an action in equity to reach other property to pay the judgment. (*Adsit* v. *Butler*, 87 N. Y. 585; *Produce Bank* v. *Morton*, 67 id. 199.)

The statute, therefore, *prima facie* at least, fixes the return of the execution unsatisfied as the test for the exhaustion of legal remedies, and · when that has been done the action may be commenced without further attempt to collect the judgment by legal proceedings. The Statute of Limitations upon an action intended to collect the judgment by attacking an alleged fraudulent transfer by suit in equity commences from the return of the execution and the cause of action is then said to have accrued. (*Weaver* v. *Havi land*, 142 N. Y. 534.)

However, it appears in the record that the Huffs were judgment debtors and the land conveyed to the plaintiff was subject to the lien of this judgment. Assuming that the return of the executions unsatisfied did not conclusively establish that all the remedies at law for the collection of the judgment had been applied, must the plaintiff have caused this land to be sold before commencing the present action? The appellant, Mrs. Potts, was the primary debtor. The grantee, Mrs. Huff, had not assumed the payment of the mortgage in her conveyance or by any agreement with her grantor. The liability of the Huffs arose out of an independent agreement, not with Mrs. Potts, but with the holder of the bond and mortgage, and which confessedly was collateral to the principal obligation. If Mrs. Huff

had paid the deficiency judgment she might have been subrogated to all the rights of the judgment creditor the same as any surety or person secondarily liable who has paid the debt of his principal debtor. Mrs. Potts, therefore, is in no situation to insist that the land of Mrs. Huff must be sold and the proceeds applied in payment or reduction of the judgment, for the avails would not be applicable to diminish it as against Mrs. Huff. Such an application would simply operate to relieve Mrs. Huff, and she is not complaining. The latter could, if she desired, turn out her property, still as collateral security for the judgment to await the termination of the suit to enforce payment against the real debtor. She might desire to avoid the expense of having her land sold, and appreciating her liability and willing to meet it, if the judgment cannot be enforced against the principal debtor, transfer it to the plaintiff to await the issue of an attempt to collect from Mrs. Potts. The proof shows that the plaintiff in purchasing the Syracuse property of Mrs. Huff, by the cancellation of an existing indebtedness and by the payment of new consideration, gave full value for whatever equity she had in the property. As a diligent creditor he had the right to get his own debt secured. Mrs. Potts may not intervene to prevent, for she, not Mrs. Huff, is the one to pay the deficiency judgment primarily.

It may be if the plaintiff in this action enforces the judgment that he has recovered, Mrs. Huff can compel the plaintiff to reconvey or account to her, depending in a measure upon her agreement.

The cases cited by the appellant's counsel (*Field* v. *Chapman*, 13 Abb. Pr. 320; 15 id. 434; *Child* v. *Brace*, 4 Paige, 309) holding that the judgment creditor must make a *bona fide* endeavor to collect his judgment against all the judgment debtors before filing a creditor's bill, assume that the judgment debtors are all liable in an equal degree, and if one is a surety the rule does not obtain and these cases recognize that exception. (See, also, *Speiglemyer* v. *Crawford*, 6 Paige, 254; *Townsend* v. *Whitney*, 75 N. Y. 425; *Duffy* v. *State ex rel. Rogers, Administrator*, 115 Ind. 351.) In *Speiglemyer* v. *Crawford* (*supra*) decree was entered against the defendant and one Tripp, the latter of whom was a surety. Execution was returned unsatisfied and Tripp arranged with the complaining creditor for taking care of the decree by special deposit but not as a payment. Suit was instituted against the principal judgment debtor,

who insisted that the remedies must all be exhausted against Tripp. The chancellor held this was not required as Tripp was a mere surety and would have been entitled to an assignment of whatever remedies the complainant had against Crawford, the principal debtor, and adds in further vindication of the arrangement made by Tripp (at p. 257): " He was, therefore, authorized to make the arrangement which he did, that the complainant should proceed in the present suit to collect the amount, if possible, out of the estate of the principal debtor. And as the original decree awarded execution in the first instance against the separate property of the principal debtor it was not necessarythat the complainant should have exhausted his remedy against the surety also before he proceeded by a creditor's bill against her alone."

It was unnecessary to make the Huffs parties in the foreclosure action. Had they not been parties this action might be maintained without any endeavor to collect of them. (*Clarkson* v. *Dunning*, 4 N. Y. Supp. 430.)

It would be an unnecessary burden upon a judgment debtor who is a surety to compel his land to be sacrificed at the instance of the principal judgment debtor before attacking fraudulent transfers made by this principal debtor. Whatever property that debtor has can be reached by suit in equity or otherwise to meet the indebtedness providing the requirement of the Code necessary to warrant the commencement of the action has been complied with. There is no proof or suggestion in the evidence in this case that there was any collusion between the judgment creditors and either of the sheriffs by which the executions were returned unsatisfied solely to furnish the technical basis for the maintenance of the action.

The trial court has found that Mrs. Potts conveyed the land in suit to her son intending to hinder and delay the enforcement of any judgment for deficiency which might arise on foreclosure of the bond and mortgage that she gave to Cox; that there was no consideration for the deed to her son and that it was the result " of a collusive and fraudulent conspiracy participated in by both of said defendants " to prevent the collection of whatever deficiency there might be. The proof establishing the fraudulent purpose of Mrs. Potts in executing the conveyance is ample. The fact that

the conveyance was a voluntary one creates the presumption that it was fraudulent. (*Smith* v. *Reid*, 134 N. Y. 568, 575; *Cole* v. *Tyler*, 65 id. 73.)

The conveyance was made by a mother to her only son. It transferred all the property which she possessed. It was made when a foreclosure of the mortgage was imminent and with the expectation that a deficiency judgment would be entered. There was no change of possession of the property following the conveyance. The land consisted of a cheap house and lot in the town of Williamstown, Oswego county, while the grantee resided and was in business in New York city. These facts, with the others found by the trial court, are sufficient to sustain the conclusion that the transfer was fraudulent.

The judgment should be affirmed, with costs to the respondent.

McLENNAN, WILLIAMS, HISCOCK and DAVY, JJ., concurred.

Judgment affirmed, with costs.