ALBERT COLE, Respondent, v. WILLIAM H. TYLER et al., Appellants.

Where, in an action to set aside a conveyance by a debtor as made to hinder, delay and defraud creditors, the conveyance is found to be fraudulent and void and judgment is perfected, setting it aside and directing a sale of the lands by a receiver, the error, if any, in directing such sale, is not ground for an appeal, but is to be rectified by motion to correct the judgment.

A debtor conveyed, without consideration, certain real estate to a third person, with a view of having the title vested in his wife, to whom it was conveyed by such third person. The property remaining to the debtor was entirely insufficient to pay his debts. *Held* (REYNOLDS, C., dissenting), that the evidence was sufficient to sustain a finding that the conveyance was made for the purpose of hindering, delaying and defrauding creditors.

The fact that the plaintiff knew of the transfer at the time it was made and raised no objection, does not, in the absence of evidence that he knew that the debtor was depriving himself of the means to pay his debts, estop him from questioning it. (REYNOLDS, C., dissenting.)

As to whether he would have been estopped had it appeared that he was cognizant of all the facts, *quære.*

(Argued September 30, 1874; decided January term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff entered upon a decision of the court at Special Term.

SICKELS—VOL. XX.　　10

This action was brought to set aside certain conveyances from John Crawford to Samuel J. Glassey, and from Glassey to Sarah E. Crawford, as being without consideration and fraudulent as to the plaintiff, a creditor of said John Crawford, and to apply the property so conveyed to the payment of a judgment recovered by the plaintiff against the said John Crawford.

The court found, in substance, that Crawford was the owner of certain real estate situated in Yonkers, Westchester county, before December 7, 1869, and, while such owner, he conveyed it, on or about that date, to Samuel J. Glassey without consideration, and with the view and purpose of vesting the title to the premises in his wife; and that Glassey, on the same day, without consideration and at Crawford's request, conveyed to Mrs. Crawford, both conveyances being duly recorded. It was further found that Crawford, when he made these conveyances and caused the property to be vested in his wife, was largely indebted; that he had no other real estate and but little personal property, and that this was largely insufficient to pay his debts, and that the conveyances above referred to were made with the avowed purpose of securing the property to Mrs. Crawford against all parties whomsoever, and for the purpose of hindering, delaying and defrauding creditors. Mrs. Crawford died intestate on the 7th of August, 1870, being a resident of the city of New York, leaving no issue, and without having disposed of or incumbered the premises so conveyed to her, which, on her death, descended to her heirs at law, who were made parties defendant to this action, and claim only in that character. The plaintiff and one Barker were copartners in business in the city of New York, and prior to May 9, 1866, had business dealings with Crawford, whereby he became indebted to them on that day in the sum of $3,885.88. Barker, for a valuable consideration, assigned his interest to the plaintiff. An action was brought in the Supreme Court, in the county of New York, to recover this amount, and judgment obtained on the 11th day of November, 1870, against him, for $5,134.68, damages and

costs, and docketed on the same day in that county, and afterward in the county of Westchester. On the same day (November eleven) execution was issued to the sheriff of the county of New York, where Crawford resided, whereupon the execution was returned unsatisfied, and no part of the judgment has since been paid.

The judge, on these facts, found, as matter of law, that the conveyance made to Mrs. Crawford was fraudulent and void as to the plaintiff and other creditors then existing; that the defendants, her heirs at law, have no better claim to the premises than Mrs. Crawford herself.

It was accordingly adjudged by the court that the conveyances should be set aside, as against the plaintiff, and his judgment was declared to be a valid lien upon the premises in litigation. It was further ordered that the land should be sold at public sale, by a receiver appointed for that purpose, and that the receiver should execute deeds to the purchasers, and that the proceeds of the sale should be applied to the payment of the plaintiff's claim.

Other facts appear in the opinions.

*Samuel Hand* for the appellants. The judgment was erroneous in directing a sale and foreclosing and barring defendants from all interest or equity of redemption in the premises. (*Hendrickson* v. *Winnie*, 3 How., 127; *Walker* v. *Waite*, 36 Barb., 594; *Farnham* v. *Campbell*, 10 Paige, 598; 2 R. S., 370, §§ 45–48; *Chautauqua Bank* v. *Risley*, 19 N. Y., 369.) Plaintiff had no other rights than those of a judgment creditor upon Crawford's land. (*Robinson* v. *Stewart*, 6 Seld., 189; *Ames* v. *Blunt*, 5 Paige, 13; *Averill* v. *Loucks*, 6 Barb., 477; *Briggs* v. *Palmer*, 20 id., 405; *Clute* v. *Fitch*, 25 id., 428.) Plaintiff was bound to prove fraudulent intent on the part of Crawford in making the conveyance in order to maintain the action. (*Dygert* v. *Remerschnider*, 32 N. Y., 639; *Phillips* v. *Wooster*, 36 id., 412; *Wilbur* v. *Fradenberg*, 52 Barb., 474; *Van Wyck* v. *Seward*, 6 Paige, 327; *Seward* v. *Jackson*, 8 Cow., 406.) Plaintiff was a privy to the transfer, and having

assented to its being made, is estopped from questioning it or charging that it was fraudulent. (*Pell* v. *Treadwell*, 5 Wend., 677; *Dennison* v. *Ely*, 1 Barb., 610; *Tilton* v. *Nelson*, 27 id., 595; *Wood* v. *Seeley*, 32 N. Y., 195.) It was not necessary to the estoppel that plaintiff should have intended to mislead. (*Bank* v. *Hazard*, 30 N. Y., 226; *Kingsley* v. *Vernon*, 4 Sandf., 361.) Plaintiff was bound to exhaust his remedy at law before this action could be maintained. (*Brinkerhoff* v. *Brown*, 4 J. Ch., 671; *McDermutt* v. *Strong*, id 687; *Stevens* v. *Badger*, 8 Paige, 130; *Forbes* v. *Walter*, 25 N. Y., 430; *Forbes* v. *Logan*, 4 Bosw., 475.) Equity had no jurisdiction in this case. (Story's Eq. Jur., 1526.)

*Hamilton Odell* for the respondent. The conveyance by Crawford to his wife was without consideration and made when he was insolvent, and therefore fraudulent as against his creditors. (*Reade* v. *Livingston*, 3 J. Ch., 481; *Bayard* v. *Hoffman*, 4 id., 450; *Jackson* v. *Seward*, 5 Cow., 67; *Seward* v. *Jackson*, 8 id., 406; 2 Edm. Stat., 142, § 4; *Carpenter* v. *Roe*, 10 N. Y., 230; *Babcock* v. *Eckler*, 24 id., 623; *Dygert* v. *Remerschnider*, 32 id., 648; *Curtis* v. *Fox*, 47 id., 300; *Van Wyck* v. *Seward*, 6 Paige, 62; *U. S. Bk.* v. *Housman*, id., 527, 534; *Jackson* v. *Post*, 15 Wend., 593; *Holmes* v. *Clark*, 48 Barb., 237; *Borst* v. *Corey*, 16 id., 136; *Lorsmore* v. *Campbell*, 60 id., 62; *Fullerton* v. *Viall*, 42 How., 494; *Dunlap* v. *Hawkins*, 2 S. C. R., 292; *Hurd's Lessees* v. *Longworth*, 11 Wheat., 199; *Fox* v. *Moyer*, 54 N. Y., 131; *Savage* v. *Murphy*, 34 id., 508; *Spaulding* v. *Worman*, 51 id., 672; *Carpenter* v. *Roe*, 10 id., 227; *Case* v. *Phelps*, 39 id., 164; *Mead* v. *Gregg*, 12 Barb., 656; *Holmes* v. *Clark*, 48 id., 237; *Wilbur* v. *Fradenburgh*, 52 id., 474; *Partridge* v. *Stokes*, 44 How., 341; *Loeschigk* v. *Addison*, 3 Robt., 349; *Wadsworth* v. *Havens*, 3 Wend., 411; *King* v. *Wilcox*, 11 Paige, 589; *Fiedler* v. *Day*, 2 Sandf., 594; 2 Edm. Stat., 142, § 1; *Planck* v. *Schermerhorn*, 3 Barb. Ch., 644; *Mason* v. *Lord*, 40 N. Y., 484; *Putnam* v. *Hubbell*, 42 id., 113; *Burgess* v. *Simonson*, 45 id., 228; *Vermilyea* v. *Palmer*, 52 id., 471; *Haydock* v. *Coope*, 53 id., 72.)

Plaintiff's judgment was conclusive evidence of Crawford's indebtedness to him. (*Burgess* v. *Simonson*, 45 N. Y., 225.) There was no ground for an estoppel. (*Brazil* v. *Isham*, 12 N. Y., 9; *M. and M. Bank* v. *Hazard*, 30 N. Y., 226; *Brown* v. *Bowen*, id., 541; *Un. Bk.* v. *Sixth Nat. Bk.*, 43 id., 456; *Cont. Bk.* v. *Bk. Comm.*, 50 id., 581; *White* v. *Ashton*, 51 id., 285; *Lawrence* v. *Am. Nat. Bk.*, 54 id., 436; *Ryder* v. *Ins. Co.*, 52 Barb., 447; *Rice* v. *Dewey*, 54 id., 455.)

DWIGHT, C. It is objected by the appellants that the judgment in this case was erroneous in directing a sale by a receiver; and that the proper course, if the conveyances to Mrs. Crawford were to be set aside, was to have the plaintiff to sell on execution against Crawford, on his original judgment.

This objection cannot be sustained. The court has power to order a transfer to a receiver in such cases. (*Chatauque County Bank* v. *Risley*, 19 N. Y., 369.) The practice, as laid down in that case, permits the court to make an order that the judgment debtor should convey to the receiver. That course was not pursued in the present instance, the judgment simply directing that the receiver should sell, execute deeds, etc. If this direction was erroneous, we are of opinion that the error is not to be rectified by an appeal from the judgment, but a motion should have been made to correct the judgment, the matter being one merely of detail, and not affecting the decision of the cause upon its merits.

It is also claimed that there was no intent on Crawford's part to defraud his creditors, and that the findings of the judge upon this subject were not sustained by the evidence. It was not necessary that there should be any actual fraudulent intent. (*Mohawk Bank* v. *Atwater*, 2 Paige, 54.) The requisite intent may be inferred from the circumstances of the case. The evidence showed that Crawford was indebted, when he made his conveyance to Mr. Glassey and through him to Mrs. Crawford, to an amount largely beyond his remaining property, or, in other words, after deducting the

amount conveyed, he had by no means sufficient property to pay the plaintiff. It will be said that he was in prosperous business, and might soon have acquired the necessary means. This suggestion is not to the purpose. The true inquiry is: Had he, at the time the alleged fraudulent conveyance was made, sufficient means to pay his debts? It was at one time the rule that a voluntary conveyance by one indebted at the time was fraudulent, as a *matter of law*, towards his creditors. No evidence was allowed to rebut the presumption of fraud. (*Reade* v. *Livingston*, 3 J. Ch., 481.) This rule was subsequently deemed to be too severe by the courts, and the less stringent rule was adopted, that while a conveyance by a person indebted was presumptively or *prima facie* fraudulent, the presumption might be rebutted by proof to the contrary. (*Seward* v. *Jackson*, 8 Cow., 406.) This presumption, however, is not to be overthrown by mere evidence of good intent or generous impulses or feelings. It must be overcome by circumstances showing on their face that there could have been no bad intent, such as that the gift was a reasonable provision, and that the debtor still retained sufficient means to pay his debts. He can no more delay his creditors by such voluntary conveyance than he can actually defraud them. (*Carpenter* v. *Roe*, 10 N. Y., 230; *Babcock* v. *Eckler*, 24 id., 623; *Dygert* v. *Remerschnider*, 32 id., 648; *Curtis* v. *Fox*, 47 id., 300.)

The judge found, as a fact, that the conveyance was made for securing certain parcels of land to the wife, and saving the same from the claims of all parties whomsoever, and also for the purpose of hindering, delaying and defrauding creditors. There was evidence to sustain this finding, and it cannot be disturbed here.

It was, however, urged, on the argument, that conceding the correctness of these views, in general, the conveyance was not fraudulent as to the plaintiff. This was maintained on the ground that the transfer to Mrs. Crawford was no secret. The plaintiff knew that it was to be made — knew that it was made and raised no objection. It is therefore insisted that he

was *privy* to the transfer, assenting to it, and forever estopped
from questioning it as fraudulent.

This claim, I think, is without force. Though the plaintiff
knew of the transfer, there is not a particle of evidence that
he knew that the defendant Crawford was depriving himself
of the means of paying his debts. The presumption was the
other way. They were intimate friends. It was undisputed
that the plaintiff had the greatest confidence in Crawford.
The very openness of the transaction would naturally tend to
disarm all suspicion. Could it be that a trusted friend would
make such a transfer openly, and yet design to defraud him?
Such would not be the ordinary supposition. Moreover, the
plaintiff might well think that he had his legal rights. Mr.
and Mrs. Crawford were bound to know the law and to be
aware that they could not defraud the plaintiff. He was no
assenting party so as to create an estoppel, certainly so long
as he did not know the true state of Crawford's affairs, and
the fact that he was defrauding himself of his estate so as to
be unable to pay his debts. It is not necessary to inquire
whether he would have been estopped had he known all the
facts. As matters stood, he certainly was not. It would be
dangerous, as well as unreasonable, to extend the doctrine of
estoppel to such a case as the present.

The plaintiff has in no respect forfeited or compromised
his right to proceed against the property of Crawford in the
hands of the heirs of Mrs. Crawford, in order to reimburse
himself for his claims as creditor.

There was some suggestion that there was collusion between
the plaintiff and Crawford in bringing this action; such collusion
was not found as a fact, and we cannot assume its existence.

There were some exceptions to the exclusion of evidence,
which we do not deem it necessary to notice specially. The
rulings of the judge were correct.

The judgment should be affirmed.

REYNOLDS, C. (dissenting). That the conveyances by which
the title of John Crawford to the real estate involved in the

present controversy was vested in his wife, Sarah E. Crawford, were without any pecuniary consideration, is unquestioned. The transaction is valid as between Crawford and his wife, and, if made in good faith and without intent to defraud creditors, is also valid as to the creditors of Crawford then existing or subsequent. We have only to consider, as the case is presented to us, whether, at the time, it was valid as to the plaintiff; for no other party claiming to be a creditor, so far as we know, challenges the integrity of the transaction. It may be admitted that, if the facts found by the learned judge before whom the cause was tried at the Special Term of the Supreme Court, in respect to the fraud alleged, were justified by any view of the .evidence which can be fairly taken, we should affirm the judgment, if no other errors appear; but I am of the opinion that there is no view of the evidence that sustains the findings in respect to the question of fraud.

It is not too much to say in the beginning that the plaintiff's case has a bad presentation, where the equity powers of a court are invoked to give relief against fraud. As to the fact of collusion between the plaintiff and Crawford in preparing for and prosecuting this action, the learned judge made no finding, one way or the other; but, if the fact of collusion had been found, no court would ever have disturbed it as not fully justified, if not required, by the evidence. And it is more than probable that, if Mrs. Crawford had not died intestate, and that, in such contingency, the law gave the property an unanticipated direction, this action would never have been thought of by either Crawford or the plaintiff. The fact that the plaintiff's case was mainly rested upon Crawford's evidence — given, apparently, with undisguised fervor — and that he is the single witness to prove his own turpitude in the transaction assailed, I think presents a case demanding more than ordinary scrutiny; and it may be added that a case depending mainly upon the evidence of a witness who voluntarily comes forward to swear to his own infamy, rests, as a general rule, upon a very unsatisfactory foundation.

I think it is to be assumed that no presumption of fraud

arises from the fact that the conveyance in question was made without any pecuniary consideration, and that the intent to defraud the plaintiff must be made out affirmatively as a matter of fact, or the action fails. (*Dygert* v. *Remerschnider*, 32 N. Y., 639; *Phillips* v. *Wooster*, 36 id., 414.)

All the evidence in the case as to the pecuniary condition of Crawford is that given by himself, as a witness for the plaintiff, and, giving it all the effect that can be claimed for it, I do not see that it makes out the fact that he, at the time of the conveyance, was insolvent or even embarrased in his pecuniary circumstances. He was engaged in a prosperous business, and had been for many years, and which he still carried on at the time the cause was tried, without any apparent hindrance or molestation. The plaintiff and his family were all this time upon intimate terms with Crawford and his wife, so long as she lived, and knew of the purchase by him of the property at Yonkers, and of his conveyance of it to his wife. The transaction was open and notorious, and in this respect unlike most cases of actual fraud. It never occurred to the plaintiff, at the time, that the transfer of title was intended to defraud him. On the contrary, he says he not only approved the purchase by Crawford, and thought it a good one and that he would make money out of it, and as to the transfer, he had no fear for himself, as he had implicit faith in Crawford and his wife. If it be assumed that the plaintiff was Crawford's creditor, the debt accrued as early as May, 1866, and resulted from a very shadowy transaction in the stock of the International Coal and Railway Company in Nova Scotia, which, it is said, was purchased for Crawford at something over eighteen per cent above par, and in three weeks thereafter became valueless, leaving, as is claimed, a balance of nearly $5,000 due from Crawford to the plaintiff and his then partner on account of the speculation. This debt, if it ever had other than a fictitious existence, existed when Crawford purchased the property in question, and on the 7th of December, 1869, when the title was vested in Mrs. Crawford, but no attempt had been made to enforce its collection until after the

decease of Mrs. Crawford, who died intestate, and without issue, on the 7th day of August, 1870. When that event occurred it appears to have been ascertained by Crawford that the property would go to Mrs. Crawford's heirs at law, and after a refusal on the part of one or more of them to release their interest to him, he said to the plaintiff, "I discover by the operation of the law that the property I expected to pay you from passes from me, or is taken from me, and you will have to look out for yourself." On the 3d of November, 1870, the plaintiff commenced an action against Crawford for the recovery of the balance alleged to be due upon the unfortunate stock speculation, being, as claimed, $4,985.88, with interest from the 9th of May, 1866. On the fourth of November Crawford offered to allow judgment for $3,885.88, with interest from the 9th of May, 1866, and costs, which offer was duly accepted on the 9th of November, 1870, and thereupon judgment was rendered in favor of the plaintiff against Crawford for $5,134.68 on the 11th of November 1870, and on the eighteenth of that month execution on that judgment was issued to the sheriff of the city and county of New York, and filed November thirtieth, with a return by the sheriff, "no personal or real property." It is to be observed in this connection that during the brief period of time from the commencement of the action against Crawford until the return of the execution, as is claimed, unsatisfied, Crawford apparently continued his business in the usual manner, and, if there is any truth in the plaintiff's case, had personal property liable to have been taken on execution; and if this fact be so, the plaintiff had not exhausted his remedy at law when the present action was commenced, notwithstanding the return of the sheriff of New York. No one can fail to notice the diligence of the plaintiff in the effort to collect his debt after the death of Mrs. Crawford or his apparent indifference before that event occurred, and the earnest effort of Crawford to stultify himself as a witness and a man, in order that the present action might be successful, puts the latter in very close relations with the plaintiff, and the whole case

shows equally intimate relations of confidence when the transfer of title now complained of was made. Indeed, it is quite impossible for me to see that under the circumstances declared by the evidence there could have been the remotest intent to defraud the plaintiff as a creditor. The plaintiff knew about the business and circumstances of Crawford, of his purchase of the real estate in question, which he considered a good speculation, and of its transfer to Mrs. Crawford, which he either approved or did not in any form object to. He then believed Crawford honest, and had implicit faith in him and his wife, and there is nothing to show in his evidence or in any of the general features of the case that he has now a different opinion, and the idea of predicating an actual intent to defraud on such a transaction seems to me preposterous, and I have no hesitation in saying that the finding of the learned judge at Special Term in that respect is wholly unsupported by evidence.

If there is an absence of an actual intent to defraud, the plaintiff, in order to overthrow the conveyance, must at least satisfactorily show that at the time the grantor had not sufficient other means to pay all his debts. It has been suggested in some cases that the fact must appear, as well as the want of intent to defraud, in order to uphold the voluntary conveyance. While I do not assent to this proposition to the full extent stated, I am still willing to assume, in disposing of the present case, that the fact stated is necessary to be proved or in some way made satisfactory to appear. But if the case shows that the conveyance was made in good faith, and with no intent to defraud creditors, it is at least incumbent upon the party who further assails the transaction to show in a very satisfactory manner that the property of the grantor in the voluntary conveyance, other than that upon which it operates, was wholly insufficient to pay his debts. In this case the evidence wholly failed to establish any such fact. It has before been said that the case in this respect rested wholly upon the evidence of Crawford, who not only in fact impeached himself, but in one or more material facts was flatly contradicted

by witnesses whose character is not questioned. This can hardly be said to create any conflict of evidence, for if a witness is not worthy of belief, cumulative evidence to show that he is unreliable does not tend to improve his condition. It then may be said to appear, without contradiction, that during all this time Crawford was publicly engaged in a prosperous business, and never met with any misfortune until he became involved in the fabulous speculations in Nova Scotia coal and railroad company stock. He was in no sense embarrassed in his business, but prospered in it, and was enabled to withdraw from it funds to invest in the real estate in question, with the approbation of the plaintiff, as a most desirable investment, as then predicted, and as it has since proved to be, and it is quite remarkable that during all this time and so far as we know, his business is prosperous and unmolested by any creditor. He has not even been sued or threatened with any suit by any one other than the plaintiff in the present action (and that plainly by collusion), except that Millard & Co., of Yonkers, filed a mechanic's lien on the property in dispute before the transfer of title to Mrs. Crawford. That claim was contested, and still remains undetermined in the courts. In other respects the evidence of Crawford is so vague and indefinite that we do not know who his creditors were or are, or the extent of their demands; but we do know that none other than the plaintiff has ever asserted or pretended that Crawford ever committed any fraud in transferring the property in question to his wife, and as to the position of the plaintiff in that regard we already have some notion.

Furthermore, it is beyond doubt that at the time of the alleged fraudulent transfer of title, the plaintiff had his debt (if any ever existed), and knew of the intended transfer of the property in question to Mrs. Crawford; that he did not object to it, but in fact gave it assent, to the knowledge of both Crawford and his wife, and that he then had, and is now supposed to have, implicit faith in their honor and integrity. It is now said that this very transaction to which he was, to all intents and purposes, a party, was intended to defraud him out

of his debt resulting from the extraordinary adventure in Nova Scotia coal and railroad company stock. This pretence ought not to succeed, and the case would not be different if he had actually made himself the transfer of title to Mrs. Crawford. (*Pell* v. *Tredwell*, 5 Wend., 677; *Dygert* v. *Remeschnider*, 32 N. Y., 637; *Phillips* v. *Wooster*, 36 id., 414.) In every aspect of this case upon the merits as presented by the record, I am unwilling to assent to the correctness of the judgment of the court below.

There are some other questions of minor importance which it might be necessary to consider if the plaintiff had any standing in court, but if I am correct it is not necessary to consider them. A new trial should be ordered.

All concur with DWIGHT, C., except REYNOLDS, C., dissenting.

Judgment affirmed.