O'CONNELL *v.* MADDEN *et al.*

*(Superior Court of Buffalo, Special Term.   October, 1889.)*

1. FRAUDULENT CONVEYANCES—INSOLVENT DEBTOR—VOLUNTARY DEED.
    Where an insolvent debtor, whose debts are all of the same class, conveys all his property to third persons, who immediately convey it to his wife, such conveyances, being without consideration, are in fraud of his creditors, and void.

2. SAME—MORTGAGE BY GRANTEE.

In such a case, mortgages executed by the insolvent's wife to certain of his creditors, after his death, do not give preferences to the mortgagees as against other creditors; the estate upon the insolvent's death becoming assets in the hands of his administratrix for the benefit of all his creditors.

Action by Bridget O'Connell, as administratrix of John Madden, deceased, against Ruth C. Madden, to set aside certain conveyances as in fraud of creditors. It appeared that plaintiff's intestate, being insolvent, and indebted to Mary Madden, Maggie Ford, and plaintiff, had conveyed his real estate to Charles Cooper, who, about three days afterwards, conveyed it to Ruth C. Madden, the intestate's wife. Both of these deeds were without consideration. Rodney Daniels became the assignee of Mary Madden's claim, and on his death his executrix was made a party defendant.

*White & Simons*, for plaintiff. *A. W. Hickman*, for defendants Ruth C. Madden and Maggie Ford. *Rogers, Locke & Milburn*, for defendants Mary Madden and Ann E. Daniels.

HATCH, J. The deeds of conveyance which vested title in Ruth C. Madden were each without consideration. John Madden was, at the time, unable to pay his debts in full. His only property was the house and lot conveyed; so that at the time of the conveyance, as well as the date of his death, he was insolvent. The rule of law under such circumstances is that failure of consideration and insolvency, coupled together, furnish controlling circumstances for finding fraudulent intent. *Erickson* v. *Quinn*, 47 N. Y. 410; *Wheel Co.* v. *Fielding*, 101 N. Y. 504–508, 5 N. E. Rep. 431; *Cole* v. *Tyler*, 65 N. Y. 73; *Potts* v. *Hart*, 99 N. Y. 168, 1 N. E. Rep. 605. The law gives no preference to a vigilant creditor in the estate of a deceased debtor. It simply impounds his property for the benefit of all his creditors. *Lichtenberg* v. *Herdtfelder*, 103 N. Y. 302–306, 8 N. E. Rep. 526. In this case, deceased, at the time of the conveyance, was insolvent. The debts existing were more than the value of all the property he then or subsequently owned. The conveyance was without consideration. This, coupled with the fact that the debts were all of the same class, the obligation to pay being the same, morally and legally, furnishes evidence sufficiently satisfactory upon which to base a finding that the deeds from Madden to Cooper and wife, and by them to Ruth C. Madden, were in law fraudulent and void as hindering, delaying, and defrauding creditors. Being so void, the estate became an asset in the hands of his administratrix for the payment of his debts, and it became and was her duty to pursue the estate in the hands of the fraudulent grantees, to the end that it might be applied to liquidate his indebtedness. *Lichtenberg* v. *Herdtfelder, supra.*

The direction, assuming it to have been made, by John Madden to pay Mary Madden's debt, created no trust in her favor to have her debts first paid. It may be assumed that if Ruth C. Madden obtained title to the property by virtue of an agreement to pay the debt of Mary Madden, so that she became personally liable for its amount, that it would furnish sufficient consideration to uphold the conveyance. Such is the contention of Mr. Locke. It must fail, however, for the reason that it finds no basis in fact. Ruth C. Madden nowhere so testified. On the contrary, her claim is that she owned one-half of the property, and was consequently entitled to it upon John Madden's death; while Mary Madden says that, just previous to John's death, he stated to Ruth, in her presence, "for her to pay me all the money he ever owed me, and the interest. He didn't say where she was to get it. * * * She [Ruth] asked how much it was. * * * He told her $1,800. *Question.* What did she say? *Answer.* Some friends came in, and she didn't say any more." She further testified that she did not know of the conveyance to Ruth until after John's death. This evidence fails to establish the agreement contended for, and there is none other adding to its strength. It cannot therefore be

said that the payment of Mary's debt formed, or was intended to form, any consideration for the execution of the deed; nor did Ruth C. Madden at any time assume to enter into any agreement by which she charged herself personally with the payment of the debt as a condition upon which she accepted the conveyance. John Madden's object, so far as expressed, was that he desired Ruth to have the benefit of it upon his decease, in preference to his heirs. There was no intimation made at the time of the conveyance as to the condition or rights of the other creditors; so that in no aspect did Ruth become in any manner chargeable with the payment of their debts. Such being the *status* of the property, and the conveyance which vested title in Ruth C. Madden being void, it became part of the estate of John Madden, and, as such, liable for his debts.

As already seen, no vigilance will inure to secure a preference in a deceased person's estate; and, the debts all being of the same class, they each stand upon the same footing. As a consequence of this, the mortgages executed by Ruth C. Madden to Rodney W. Daniels and Maggie Ford, as well as the assignment by Daniels to Mary Madden, do not avail to secure a preference in their favor as against the plaintiff or other creditors, but they must be canceled and discharged as liens upon the property, and each creditor paid in full, if the property be sufficient, or *pro rata*, as the case may be; the portion subject to the creditors' lien being the proceeds of the property subject to the lien of the prior existing mortgage, and the dower of the widow. The conveyances are also sought to be upheld upon the doctrine of a resulting trust in favor of the grantee, Ruth C. Madden. This contention finds support, if at all, in the testimony of the witness Cooper as to the declaration of John Madden, made just prior to the conveyance, that he wanted to make provision for Ruth. She owned half interest in this property down below when this deed was made out of the house and lot; and he wanted she should have the property while she lived, and no one else have it until she got through with it. He said they had no heirs, and she was the one that ought to have it. Assuming this testimony competent for the purpose of this case, it falls short of establishing as a clear fact that any portion of what was called the "property down below" went to furnish, in whole or in part, the purchase price of the property affected by the present action; nor is this position aided by the testimony of Ruth, as, at the most, it was a mere supposition upon her part. The title to the property on Seneca street was held jointly by Madden and his wife. They each, therefore, became seised of the entirety. *Bertles* v. *Nunan*, 92 N. Y. 152. When this property was sold, assuming its proceeds went to purchase the present property, it nowhere appears that there was then any understanding or claim made by Ruth C. Madden that she had or claimed any interest in the property affected by this action. The fact that title was taken by the husband alone rebuts such presumption, and, in addition, it was so taken with knowledge on her part. Her legal title was thus wiped out and gone; nor was it kept alive by virtue of any agreement, nor was any equitable interest claimed. From this we are quite able to say her legal title has not survived, and the claim is not now available to defeat the creditors of John Madden. *Niver* v. *Crane*, 98 N. Y. 40. But, if we treat one-half as paid by the wife, no trust resulted in her favor, as the statute provides that where the compensation is paid by one person, and the title is taken in the name of another, no trust results in favor of the person paying the money. 4 Rev. St. (8th Ed.) § 51, c. 1, pt. 2, p. 2437. See *Niver* v. *Crane, supra.* The exceptions in the statute are not applicable here. It thus appearing that the deed was taken in the name of John Madden upon payment by him of a portion of the purchase money, and that such title was so taken with the knowledge and consent of Ruth C. Madden, no trust resulted in her favor, even though some portion of the purchase money at the time legally belonged to her. *Hurst* v. *Harper*, 14 Hun, 280.

It is not overlooked that there may be established an implied or resulting trust, recognized at common law notwithstanding the statute; but careful examination of the cases cited fails to convince my mind that they are applicable to the facts developed here, for the reason that the evidence is insufficient to show any equitable interest in Ruth C. Madden at the date of the conveyance beyond her dower interest. If these views are correct, it follows that the plaintiff should have judgment setting aside the conveyances from John Madden to Cooper, and from Cooper to Ruth C. Madden; also a judgment setting aside and canceling the three mortgages, viz., that to Rodney W. Daniels, assigned by him to Mary Madden, the one now held by Ann E. Daniels as executors, etc., and the mortgage to Maggie Ford; also a decree adjudging that the said property be sold under the direction of the court, and out of the proceeds thereof there be first paid the prior mortgage, and the widow's right of dower, and that the balance be applied in payment of the just debts of John Madden in full, if there be sufficient for that purpose, and, if not, then *pro rata* equally upon each. Costs of this action to be paid out of the property.