**FEIST v. DRUCKERMAN et ux.**

**No. 149.**

Circuit Court of Appeals, Second Circuit.

April 16, 1934.

Edward Weinfeld, of New York City (Louis Kunen and Edward Weinfeld, both of New York City, of counsel), for defendant-appellant Leah Druckerman.

Lewis, Marks & Kanter, of Brooklyn, N. Y. (Lloyd B. Kanter, of Brooklyn, N. Y., of counsel), for complainant-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Max Druckerman and his brother William Druckerman were copartners doing business under the name of Pioneer Embroidery Works. The complainant was elected trustee in bankruptcy of the copartnership and the individual partners on April 30, 1931. The complainant, as trustee in bankruptcy of Max Druckerman, brought suit against the latter's wife, Leah Druckerman, to set aside a conveyance which he had made to her of real property situated in the borough of Queens, N. Y. The conveyance was dated October 15, 1930, and was recorded on October 21, 1930, in the office of the register of Queens county. The bill of complaint alleged that this conveyance was without consideration, that at the time Max Druckerman was insolvent, and that it was made with intent to hinder, delay, and defraud the latter's creditors. The petition in bankruptcy was filed on March 28, 1931, and the adjudication was on April 16, 1931. The District Judge held that section 276 of the New York Debtor and Creditor Law applied and that the conveyance should be set aside. In the course of his opinion (6 F. Supp. 751) he said that he was "convinced that the conveyance by the bankrupt to his wife was a voluntary one and intended to put the property beyond the reach of his creditors." He made findings that the conveyance was voluntary and without consideration and that at the time it was made Max Druckerman was indebted to banks in the sum of $85,000, of which there

still remained unpaid $42,500, and that thereby he intended to hinder, delay, and defraud his creditors.

The first question is whether the evidence showed an intent to hinder, delay, and defraud creditors.

There was no proof of the extent of the assets and liabilities of Max Druckerman at the time of the conveyance. His firm were makers of three notes, which he indorsed, aggregating $90,000, on one of which a payment of $5,000 had been made. This balance of $85,000 has been reduced to $42,500 by a dividend of 50 per cent. paid to creditors by the trustee in bankruptcy. At the time of the trial the trustee had approximately $41,000 cash in hand, and it was not shown that this was not sufficient to pay the remaining 50 per cent. due to creditors.

On October 29, 1930, Max and his brother, who owned a joint policy of life insurance for $50,000, obtained its full surrender value, and Max deposited his share of the proceeds, amounting to $2,921.92, in his personal account. In January, 1931, when he was aware that his firm was in financial difficulties, he paid over to his son, who lived with him, $3,500, which was substantially all the bank balance he had. This he said was done because he owed the son that amount.

The conveyance by Max Druckerman to his wife was of his interest in three lots of land in Queens. He owned the entire fee in two of them, which had no market value. The third lot, which was worth $50,000, was owned jointly by him and his wife, Leah. It was incumbered by arrears of taxes amounting to about $8,000, and his undivided half was subject to a mortgage of $10,000 held by a corporation in which his brother controlled the stock. This mortgage was reduced to $7,000 in August, 1930. He conceded that his wife had paid nothing for the transfer of the lots, but said that she had agreed to assume the mortgage and to pay the arrears of taxes as consideration for the conveyance of his one-half interest to her. But the conveyance contained no words of assumption and was only "subject to the lien" of the mortgage and "subject to unpaid taxes," and it was found by the trial court to have been made with no undertaking to assume such obligations.

■ In view of the false statement of Max as to such a vital matter as an assumption by Leah of the mortgage and in view also of the transfer of property to his wife and son and of his conversion of his life insurance policy, all within six months of the filing of the petition in bankruptcy, there is some reason to hold that an inference of "actual intent" to defraud creditors "as distinguished from intent presumed in law," should be drawn and that accordingly the conveyance should be set aside under the provisions of section 276 of the New York Debtor and Creditor Law. We are, however, inclined to think that the testimony when taken alone was not sufficient to prove actual fraud, and that a cause of action under section 276 of the New York Debtor and Creditor Law must fail. That section reads as follows:

"*Conveyance made with intent to defraud.* Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

It seems to us reasonably clear that, if there is not evidence sufficient in itself to show actual intent to defraud, a conveyance cannot be set aside under section 276.

■■ But section 273 of the Debtor and Creditor Law is founded upon another theory, which is that a transfer by an insolvent is fraudulent irrespective of any actual intent. It reads as follows:

"*Conveyances by insolvent.* Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Now, there is a rule of long standing in the New York courts that a *voluntary* conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent. Cole v. Tyler, 65 N. Y. 73; Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082; Kerker v. Levy, 206 N. Y. 109, 99 N. E. 181; GaNun v. Palmer, 216 N. Y. 603, 111 N. E. 223. In Cole v. Tyler, 65 N. Y. 73, 78, it was said:

"This presumption * * * is not to be overthrown by mere evidence of good intent or generous impulses or feelings. It must be overcome by circumstances showing on their face that there could have been no bad intent, such as that the gift was a reasonable provision, and that the debtor still retained sufficient means to pay his debts.

He can no more delay his creditors by such voluntary conveyance than he can actually defraud them."

Thus it appears that the presumption has no relation to actual fraud and cannot be met by proof that such mala fides did not exist. Judge Cardozo in GaNun v. Palmer, 216 N. Y. 611, 111 N. E. 223, said that·"a transfer without consideration by one who is then a debtor raises a presumption of fraud. The creditor may stand upon that presump-·tion until it is repelled. It is not for him to show what other property was retained." We think that section 273 embodies this judge-made presumption as a background.

In Pennsylvania, where there is a Uniform Fraudulent Conveyance Act (39 PS § 351 et seq.), a plaintiff who attacks a transfer made by a husband to a wife may rely on a presumption similar to the one here and need not prove insolvency unless the defendant introduces evidence to the contrary. People's Sav. & Dime Bank & Trust Co. v. Scott, 303 Pa. 294, 154 A. 489, 79 A. L. R. 129; Queen-Favorite Building & Loan Ass'n v. Burstein, 310 Pa. 219, 165 A. 13. In New Jersey, under a similar uniform act (Comp. St. Supp. § 44—142 et seq.), the courts place the burden on the creditor who attacks the transfer and do not give him the benefit of the presumption. Camden Securities Co. v. Nurock, 114 N. J. Eq. 18, 168 A. 308, affirming 112 N. J. Eq. 92, 163 A. 547. Thus it will be seen that the presumptions allowed after the so-called uniform act have differed in different states.

In New York the Appellate Division has held that the presumption still survives. Montalbano v. Mazziatta, 236 App. Div. 845, 260 N. Y. S. 224. Such a presumption is no more than a rule of procedure in a particular jurisdiction. It imposes on the volunteer transferee of one who has creditors the duty of going forward with proof to show the solvency of the transferor in order to prevent the conveyance from being set aside. The presumption has existed in many of our states, and we see no reason to suppose that the uniform acts proposed to destroy such a rule of procedure in the absence of some express language to that effect.

The defendant here did nothing to meet the presumption. The proof that there was no consideration for the transfer was clear and so held by the trial court, and there was no proof offered to show the solvency of Max Druckerman at the time of the conveyance, so the trustee must win.

It is true that the trial court allowed recovery under section 276, but both the bill of complaint and the proof, aided by the presumption, warrant a recovery under section 273.

Decree affirmed.