In the Matter of Peter and Geraldine TABALA, Debtors.

Bankruptcy No. 80 B 20106.
Adv. No. 80 ADV 2095.

United States Bankruptcy Court,
S. D. New York.

May 29, 1981.

Barr & Faerber, Spring Valley, N. Y., for trustee.

Blank & Katzman, Spring Valley, N. Y., for debtors.

Eric B. Kaviar, Yonkers, N. Y., for Carvel Corp.

### DECISION ON TRUSTEE'S COMPLAINT TO SET ASIDE CONVEYANCE BY DEBTORS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in bankruptcy has invoked Code § 544(b) in this adversary proceeding, in an effort to set aside a conveyance of the debtors' residence to their three daughters approximately 17 months before they filed their voluntary petition under Chapter 7 of the Bankruptcy Code. The trustee cannot employ Code § 548 with respect to fraudulent transfers because the transfer in this case took place more than one year before the filing of the petition. Hence, the trustee looks to the six year limitations period under the New York Debtor and Creditor Law and seeks to show that there existed an actual unsecured creditor at the time of the transfer who could have set it aside under state law, so that the trustee may step into the shoes of such creditor and void the entire transfer, as permitted under *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931) and as reflected in Code § 544(b), which is derived from Section 70(e) of the former Bankruptcy Act.

### FINDINGS OF FACT

1. The debtors, husband and wife, filed with this court their voluntary joint petition pursuant to Chapter 7 of the Bankruptcy Code on March 26, 1980. In accordance with Code § 301, the commencement of this voluntary case constitutes an order for relief under Chapter 7.

2. In November of 1974, the debtors purchased a one-family house located at 16 Seymour Drive, Clarkstown, New York for $65,000. A first mortgage in the sum of $35,000 was obtained to finance the transaction.

3. In November of 1976, the debtors purchased from one Fay Levine, for $70,-000, a Carvel ice cream business and obtained from the Carvel Corporation a license, expiring October 31, 1985, to sell Carvel ice cream products under the Carvel names and trademarks. To finance this purchase, the debtors obtained a loan of $25,000 from a friend, to whom they gave a second mortgage on their home. Additionally, the debtors borrowed approximately $35,000 from the People's National Bank, to whom they gave a security interest in the store assets.

4. On October 23, 1978, the debtors conveyed their residence to their three daughters, then ages 9, 19 and 20, for no consideration. The reason given for such transfer was that the previous owner of the Carvel store had been shot in a hold-up and that the transfer of the house was intended as a testamentary substitute.

5. The debtors continued to reside in the house in question, making the mortgage and utilities payments and maintaining the insurance. They deducted the mortgage interest and real estate taxes from their personal income taxes.

6. When the debtors transferred their residence to their daughters on October 23, 1978, the face amount of the two mortgages against it totalled $60,000 (not deducting for any principal payments), whereas the purchase price four years earlier had been $65,000. Thus, there was at least a $5,000. equity in the house. There was no evidence introduced as to any appreciation from the date of purchase until the date of transfer, nor, for that matter, was there evidence of any diminution in value.

7. In addition to creditors holding secured claims on October 23, 1978, when the house was transferred, there also existed two unsecured creditors, namely Howard Dean, the landlord of the premises of the Carvel Store, with an undetermined claim for rent, and Carvel Corporation, who had a claim for $4,852.92 for merchandise sold to the debtors. A judgment had been entered against the debtors in favor of Sears, Roebuck & Co., Inc. in the sum of $259.62 which was docketed on November 30, 1977, with the County Clerk of Rockland County, New York. The debtors claim that this judgment was paid in 1978 but that they did not have funds to have it removed from the judgment docket. There was no evidence as to such payment other than as testified.

8. The debtors did not offer any proof as to the value of their assets remaining, if any, immediately after they transferred their residence to their daughters. While they did continue to operate the Carvel business, which they previously purchased for $70,000, they did not own the store itself; they were merely tenants of the owner, one Howard Dean. Their interest in this business was encumbered by a mortgage of approximately $35,000 and a security interest held by the former store operator, Fay Levine, of approximately $8,000. Moreover, the Carvel license could be terminated by Carvel at its expiration date, on

October 31, 1985, so that the closer in time to the expiration date, the less value the store would have. Until the filing of the debtor's petition under Chapter 7, the debtors owed unpaid rent to the landlord of the store. There was no proof that this store was profitable or that any specific value could be ascribed to it at the time the debtors transferred their residence to their daughters.

9. After the conveyance of their residence, the debtors stopped purchasing ice cream mix from Carvel. Under the Carvel license, Carvel had a right to add a surcharge on each gallon of mix purchased by the debtors in order to liquidate any indebtedness to Carvel. Apparently, Carvel would not sell mix to the debtors; therefore they purchased the mix from other Carvel licensees. Thus, Carvel was frustrated in its desire to reduce its indebtedness because it would not risk increasing the debt by selling more mix to the debtors and could not, therefore, reduce its claim by collecting a surcharge on further sales. Moreover, the debtors' obligation to Carvel under its license to pay for minimum royalties and minimum advertising continued to mount.

10. On October 23, 1978, when the debtors transferred their house to their daughters for no consideration, they owed obligations in excess of $100,000, which included a first mortgage on their home of approximately $35,000 to the Rockland County Savings Bank; a $25,000 second mortgage on their home for a loan from a friend to finance the purchase of the Carvel store; a $35,000 mortgage to the People's National Bank securing the assets of the Carvel store; $8,000 to Fay Levine, secured by assets of the Carvel store; an unsecured obligation of $4852.92 to Carvel for merchandise purchased and an undetermined amount of back rent to the landlord of the Carvel store. There also existed a judgment of record in favor of Sears, Roebuck & Co., Inc. for $259.62 which the debtors claim was paid.

11. From the foregoing facts, it is found that the debtors' transfer of their residence to their daughters without consideration

and while they were indebted was presumptively made while they were insolvent, in the absence of some proof to the contrary. The debtors did not satisfy their burden of going forward with proof of their solvency on October 23, 1978.

## DISCUSSION

In accordance with Code § 544(b) the trustee may avoid any transfer of an interest of a debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under Code § 502. In this case, the Carvel Corporation held an unsecured allowable claim for $4,852.92 on October 23, 1978, when the debtors conveyed their one-family house, for no consideration, to their three daughters, ages 9, 19 and 20. Accordingly, the trustee asserts that Carvel Corporation, and therefore the trustee, may set aside the debtors' conveyance as violative of the Uniform Fraudulent Conveyances Act, as adopted by New York under the New York Debtor and Creditor Law, Sections 270 et seq.

■ The controlling authority is Section 273 of the Debtor and Creditor Law which provides:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Fair consideration is not at issue in this case since the debtors' conveyance was made for absolutely no consideration. Moreover, actual intent to defraud need not be shown; constructive intent is established if the debtor was insolvent at the time of the transfer, or was rendered insolvent thereby.

Section 271 of the Debtor and Creditor Law is similar to Code § 101(26)(A) and defines insolvency as follows:

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

■ In applying Sections 273 and 271 of the Debtor and Creditor Law, the courts in New York have raised a presumption of insolvency when a debtor transfers his property without consideration when debts are outstanding. Thus, Judge Augustus Hand stated the rule in *Feist v. Druckerman*, 70 F.2d 333, at 334 (2 Cir. 1934) as follows:

"Now, there is a rule of long standing in the New York courts that a *voluntary* conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent. *Cole v. Tyler*, 65 N.Y. 73; *Smith v. Reid*, 134 N.Y. 568, 31 N.E. 1082; *Kerker v. Levy*, 206 N.Y. 109, 99 N.E. 181; *Ganun v. Palmer*, 216 N.Y. 603, 111 N.E. 223.

.    .    .    .    .

It imposes on the volunteer transferee of one who has creditors the duty of going forward with proof to show solvency of the transferor in order to prevent the conveyance from being set aside."

■ As noted in *In re Franklin National Bank*, 2 B.R. 687 at 710 (D.C.E.D.N.Y.1979), the burden of going forward with proof of solvency is on the transferee, whereas under Federal law, the procedure is otherwise, citing 4 *Collier on Bankruptcy*, § 67.32. In a strikingly similar case, Judge Price in *In re Russo*, 1 B.R. 369 at 379 (B.C.E.D.N.Y. 1979), affirmed September 11, 1980 (D.C. E.D., Nickerson, D.J.) also stated the rule with respect to Section 273 of the Debtor and Creditor Law to be that "a conveyance made by a grantor, without consideration, at a time when he is indebted to various creditors, raises a presumption of his insolvency." He further observed that the statute imposes a "balance sheet" test as to whether the fair salable value of the debtor's assets was sufficient to pay his debts.

■ In this case the debtors failed to go forward with the evidence to show their

solvency on October 23, 1978, when they transferred their home to their daughters for no consideration. That the debtor paid $70,000 for the Carvel business two years before the conveyance does not show what the debtors' balance sheet looked like two years later when the debtors' obligations exceeded $100,000. The debtors failed to meet their burden of going forward with evidence to show that at the time of the voluntary transfer of their residence, and immediately thereafter, they had sufficient assets to pay their then outstanding debts, which exceeded $100,000. Hence, the trustee has established that the transfer is fraudulent and may be voided.

## CONCLUSIONS OF LAW

1. The debtors' conveyance of their residence to their daughters without any consideration, while they were then indebted to Carvel Corporation, an unsecured creditor with an allowable claim under Code § 502, is deemed to have been made when they were presumptively insolvent.

2. The debtors did not satisfy their burden of going forward with proof of their solvency within the meaning of Section 271 of the New York Debtor and Creditor Law.

3. Carvel Corporation, and therefore the trustee, may set aside the debtors' voluntary transfer of their residence to their daughters on October 23, 1978, as a fraudulent transfer within the meaning of Section 273 of the New York Debtor and Creditor Law, as authorized under Code § 544(b), regardless of the debtors' actual intent.

4. The trustee in bankruptcy is entitled to an order declaring the debtors' fraudulent transfer of their residence null and void as against the trustee so that the property so transferred passes to the estate.

*SUBMIT ORDER ON NOTICE.*